**Michigan Supreme Court**
Lansing, Michigan 48909

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 31, 2003**

QUALITY PRODUCTS AND
CONCEPTS COMPANY,

    Plaintiff-Appellee,

v                                    No. 119219

NAGEL PRECISION, INC,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

YOUNG, J.

    This case implicates fundamental principles of contract law. The primary issue presented concerns the circumstances under which a contract can be waived or modified, particularly where the contract protects itself against certain methods of waiver or modification. At the heart of this inquiry is how to resolve the tension between the freedom to contract—specifically, in this case, the freedom to enter into a contract concerning the same subject as the original

contract—and the provisions of the original contract that restrict the manner in which the contract's terms may be waived or modified.

We hold that parties to a contract are free to *mutually* waive or modify their contract notwithstanding a written modification or anti-waiver clause because of the freedom to contract. However, with or without restrictive amendment clauses, the principle of freedom to contract does not permit a party *unilaterally* to alter the original contract. Accordingly, mutuality is the centerpiece to waiving or modifying a contract, just as mutuality is the centerpiece to forming any contract.

This mutuality requirement is satisfied where a waiver or modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to modify or waive the particular original contract. In cases where a party relies on a course of conduct to establish waiver or modification, the law of waiver directs our inquiry and the significance of written modification and anti-waiver provisions regarding the parties' intent is increased.

Plaintiff's evidence establishes only that defendant remained silent despite being aware of plaintiff's conduct inconsistent with the terms of their contract. Mere knowing silence generally cannot constitute waiver. Therefore,

2

plaintiff has not submitted clear and convincing evidence that the parties mutually agreed to modify or waive their contract. Accordingly, we reverse the judgment of the Court of Appeals and reinstate the original judgment of the circuit court granting summary disposition to defendant.

## I. Background

Plaintiff and defendant entered into a contract under which plaintiff was to serve as a sales representative for defendant. Pursuant to the agreement, plaintiff would earn commissions on sales made to customers in plaintiff's contractually designated sales territory. The contract negotiated by the parties not only expressly defined plaintiff's sales territory, but specifically excluded sales to "machine tool suppliers." The contract also included written modification and anti-waiver clauses.

Despite these provisions, plaintiff solicited sales from Giddings & Lewis and Ex-Cell-O. It is undisputed that Giddings & Lewis and Ex-Cell-O are machine tool suppliers and are therefore customers excluded from plaintiff's sales territory under the contract.

Consistent with the unambiguous terms of the contract, plaintiff was denied commissions on these sales. Plaintiff sought to negotiate an amendment of the contract to include payment of commissions for sales to machine tool suppliers. However, plaintiff and defendant could not reach an agreement

3

to reconfigure plaintiff's sales territory and grant plaintiff the right to sell products to machine tool suppliers. As a result, the parties' contractual relationship ended.

Plaintiff filed suit seeking payment of commissions for its sales to Giddings & Lewis and Ex-Cell-O, alleging breach of "oral contract, implied/express contract/modification, quantum meruit, unjust enrichment." Defendant moved for summary disposition on the basis of the provisions of the written contract.

The circuit court granted summary disposition to defendant, stating in pertinent part:

> For purposes of this motion the court must look at the facts in a light most favorable to plaintiff. Therefore, the court will accept as true that defendant knew about plaintiff's efforts to procure sales with the machine tool suppliers and that defendant never objected to plaintiff's efforts.
>
> Plaintiff seeks quantum meruit relief, alleging that defendant impliedly consented to modify the written agreement and/or waived the requirement that modifications be in writing by failing to object to plaintiff's actions or notify plaintiff that there would be no commission. Plaintiff relies on the case of *Klas v Pearce Hardware & Furniture Co*, 202 Mich 334, 339-340 (1918), where the court held that defendant impliedly waived the requirement that a modification be in writing when he was benefitted by plaintiff's services and was aware of and *authorized* changes or deviations to the written contract.
>
> The facts of the case at bar are distinguishable from the facts in *Klas*. When asked to put the request for extra work in writing as required by the written contract, the defendant in

4

*Klas* replied that "there was no necessity of going back to the contract on that point, that they were not children, they were willing to pay for any work they would order." *Id.* at 336.

In the case at bar, there is no evidence that defendant did anything to encourage or authorize plaintiff to seek sales outside of the express territory found in the written contract. Plaintiff unilaterally attempted to modify the written sales agreement by soliciting sales from suppliers outside of the territory expressly defined in the agreement. Plaintiff alleges that defendant encouraged them to continue seeking the Giddings & Lewis and Ex-Cell-O sales, however, plaintiff has presented no evidence to support this allegation. While there is evidence that defendant had knowledge of plaintiff's efforts, there is no evidence that defendant encouraged plaintiff or mutually consented to extend the sales agreement to machine tool suppliers. The mere fact that defendant knew of plaintiff's activities and did not object to them is not enough to constitute a waiver of the written modification requirement. The court finds no question of fact for the jury to decide.

The Court of Appeals reversed and remanded, holding that, *although there was no evidence in the record that the parties expressly modified the written agreement*, there were genuine issues of material fact regarding the issues of waiver and implied contract.[1] The Court of Appeals relied on *Klas v Pearce Hardware & Furniture Co,* 202 Mich 334; 168 NW 425 (1918)*,* for the proposition that waiver of a written modification requirement may be implied where conduct, such as silence in the face of knowledge, misleads a party into

---

[1]Unpublished opinion per curiam, issued March 21, 2000 (Docket No. 207538).

5

reasonably believing that a contractual provision has been waived.

In lieu of granting leave to appeal, this Court issued the following order:

> [T]hat part of the Court of Appeals March 21, 2000, decision which held that a genuine fact issue exists regarding whether a contract may be implied in law is vacated. MCR 7.302(F)(1). Such a contract cannot be recognized where, as here, the express contract covers the subject sales by providing that no commission would be paid for them. The case is remanded to the Court of Appeals for reconsideration of the issue whether there exists a genuine fact dispute regarding whether defendant's alleged silence in the face of plaintiff's activity relative to the excluded machine tool suppliers constituted a waiver in light of the anti-waiver provision in the contract which purports to prevent modification of the written agreement. [463 Mich 935 (2000).]

The Court of Appeals again reversed[2] the circuit court's grant of summary disposition and remanded to the circuit court, centering its analysis on the written modification clause. The Court failed to take into consideration the anti-waiver clause, contrary to the directions in our order.[3]

We granted leave to appeal and directed the parties to include among the issues to be briefed

---

[2]Unpublished opinion per curiam, issued April 24, 2001 (Docket No. 207538).

[3]Despite our explicit reference to the anti-waiver clause and our direction to the Court of Appeals to construe it, the panel failed to do so. Instead, the panel acknowledged the reference to the anti-waiver clause in our remand order, but, nevertheless, and for reasons unspecified, assumed that this Court was referring to the written modification clause.

6

whether there exists a genuine dispute of fact about whether defendant's alleged silence in the face of plaintiff's activity relative to the excluded machine tool suppliers constituted a waiver in light of the anti-waiver provision in the contract, paragraph 11, which purports to prevent silent modification of the written agreement. . . . [467 Mich 895-896 (2002).]

## II. Standard of Review

We review de novo lower court decisions on a motion for summary disposition. *First Pub Corp v Parfet*, 468 Mich 101, 104; 658 NW2d 477 (2003). In reviewing the motion, the pleadings, affidavits, depositions, admissions, and any other admissible evidence are viewed in the light most favorable to the nonmoving party. *Radtke v Everett,* 442 Mich 368, 374; 501 NW2d 155 (1993). The legal effect of a contractual clause is a question of law that is reviewed de novo. *Bandit Industries, Inc v Hobbs Int'l, Inc (After Remand)*, 463 Mich 504, 511; 620 NW2d 531 (2001).

## III. Discussion

We granted leave to appeal to consider whether the Court of Appeals erred in concluding that a genuine issue of material fact exists concerning plaintiff's allegation that defendant silently waived or modified contractual provisions. Plaintiff argues that defendant waived provisions of the contract by failing to object to plaintiff's sales activity in the face of defendant's knowledge of that activity.

## A. Analytic Framework

In order to decide this case, we must consider what circumstances may support amendment of a contract, particularly where the contract protects itself against certain methods of waiver or modification.

At the heart of this inquiry is the freedom to contract. As this Court recently observed in *Wilkie v Auto-Owners Ins Co,* 469 Mich ___, ___; ___ NW2d ___ (2003):

> This approach, where judges . . . rewrite the contract . . . is contrary to the bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance such as a contract in violation of law or public policy. This Court has recently discussed, and reinforced, its fidelity to this understanding of contract law in *Terrien v Zwit*, 467 Mich 56, 71; 648 NW2d 602 (2002). The notion, that free men and women may reach agreements regarding their affairs without government interference and that courts will enforce those agreements, is ancient and irrefutable. It draws strength from common-law roots and can be seen in our fundamental charter, the United States Constitution, where government is forbidden from impairing the contracts of citizens, art I, § 10, cl 1. Our own state constitutions over the years of statehood have similarly echoed this limitation on government power. It is, in short, an unmistakable and ineradicable part of the legal fabric of our society. Few have expressed the force of this venerable axiom better than the late Professor Arthur Corbin, of Yale Law School, who wrote on this topic in his definitive study of contract law, *Corbin on Contracts*, as follows:
>
> > "One does not have 'liberty of contract' unless organized society both forbears and enforces, forbears to penalize him for making his

8

bargain and enforces it for him after it is made."
[15 Corbin, Contracts (Interim ed), ch 79, § 1376,
p 17.]

While the freedom to contract principle is served by requiring courts to enforce unambiguous contracts according to their terms, the freedom to contract also permits parties to enter into new contracts or modify their existing agreements. Thus, as in the present case, we are required to resolve the tension between the freedom to enter into a contract concerning the same subject matter as a previous contract and provisions in the previous contract restricting the manner in which original contractual terms may be modified or waived.

Justice CAMPBELL wrote on this issue over a century ago when he stated:

> [T]he case seems to settle down to the simple question whether a person who has agreed that he will only contract by writing in a certain way, precludes himself from making a parol bargain to change it. The answer is manifest. A written bargain is of no higher legal degree than a parol one. Either may vary or discharge the other, and there can be no more force in an agreement in writing not to agree by parol, than in a parol agreement not to agree in writing. Every such agreement is ended by the new one which contradicts it. [*Westchester Fire Ins Co v Earl*, 33 Mich 143, 153 (1876).]

Echoing Justice CAMPBELL was this Court's similar conclusion in *Reid v Bradstreet Co*, 256 Mich 282, 286; 239 NW 509 (1931):

> It is well established that a written contract may be varied by a subsequent parol agreement unless forbidden by the statute of frauds; and that

9

this rule obtains though the parties to the original contract stipulate therein that it is not to be changed except by agreement in writing.

In discussing the subject of varying written instruments by parol, Prof. Williston says:

"Nor does it make any difference that the original written contract provided that it should not subsequently be varied except by writing. This stipulation itself may be rescinded by parol and any oral variation of the writing which may be agreed upon and which is supported by sufficient consideration is by necessary implication a rescission to that extent." Williston, Contracts, § 1828.

The theory of the rule is that:

"Whenever two men contract, no limitation self-imposed can destroy their power to contract again." [Citation omitted.]

Moreover, the next year, in *Banwell v Risdon,* 258 Mich 274, 278-279; 241 NW 796 (1932), we held that contracting parties are at liberty to design their own guidelines for modification or waiver of the rights and duties established by the contract, but even despite such provisions, a modification or waiver can be established by clear and convincing evidence that the parties mutually agreed to a modification or waiver of the contract.

Accordingly, it is well established in our law that contracts with written modification or anti-waiver clauses can be modified or waived notwithstanding their restrictive amendment clauses. This is because the parties possess, and never cease to possess, the freedom to contract even after the

original contract has been executed.

However, the freedom to contract does not authorize a party to *unilaterally* alter an existing bilateral agreement. Rather, a party alleging waiver or modification must establish a mutual intention of the parties to waive or modify the original contract. *Banwell, supra.* This principle follows from the contract formation requirement that is elementary to the exercise of one's freedom to contract: mutual assent.

Where mutual assent does not exist, a contract does not exist. Accordingly, where there is no mutual agreement to enter into a new contract modifying a previous contract, there is no new contract and, thus, no modification. Simply put, one cannot unilaterally modify a contract because by definition, a unilateral modification lacks mutuality.[4]

The mutuality requirement is satisfied where a modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to waive the terms of the original contract. In meeting this clear and convincing burden, a party advancing amendment must establish

---

[4] We note that the understanding that an express bilateral agreement is not susceptible to unilateral modification is consistent with our remand order in this very case, where we held that an implied-in-law contract cannot contradict an express contract on the same subject. See also, e.g., *Scholz v Montgomery Ward & Co, Inc,* 437 Mich 83, 93; 468 NW2d 845 (1991); *In re De Haan's Estate,* 169 Mich 146, 149; 134 NW 983 (1912).

11

that the parties mutually intended to modify the *particular* original contract, including its restrictive amendment clauses such as written modification or anti-waiver clauses.

Upon proof of an express oral or written agreement, the mutuality requirement is clearly satisfied. This is because where the parties expressly modify their previous contract, rescission of the terms of the prior agreement is a necessary implication. *Reid, supra.* By the clear expression of the parties, contradictory provisions in the prior agreement are *waived*.

However, in situations where a party relies on a course of conduct to establish modification, mutual assent is less clear and thus the rescission, or *waiver,* of the original contract's terms is not so evident.[5] As a result, where course of conduct is the alleged basis for modification, a waiver analysis is necessary.

As we have stated in other contexts, a waiver is a voluntary and intentional abandonment of a known right. *Roberts v Mecosta Co Hosp,* 466 Mich 57, 64 n 4; 642 NW2d 663 (2002)*; People v Carines,* 460 Mich 750, 762 n 7; 597 NW2d 130 (1999). This waiver principle is analytically relevant to a case in which a course of conduct is asserted as a basis for

---

[5]This potential ambiguity is, in part, why parties to a contract often include written modification and anti-waiver provisions; that is, to protect against unintended and unilateral modification or waiver.

amendment of an existing contract because it supports the mutuality requirement. Stated otherwise, when a course of conduct establishes by clear and convincing evidence that a contracting party, relying on the terms of the prior contract, knowingly waived enforcement of those terms, the requirement of mutual agreement has been satisfied.

Further, whereas an original contract's written modification or anti-waiver clauses do not serve as barriers to subsequent modification by express mutual agreement, the significance of such clauses regarding the parties' intent to amend is heightened where a party relies on a course of conduct to establish modification. This is because such restrictive amendment clauses are an *express mutual statement* regarding the parties' expectations regarding amendments.

Accordingly, in assessing the intent of the parties where the intent to modify is not express, such restrictive amendment provisions are not necessarily dispositive, but are highly relevant in assessing a claim of amendment by course of conduct. Any clear and convincing evidence of conduct must overcome not only the substantive portions of the previous contract allegedly amended, but also the parties' express statements regarding their own ground rules for modification or waiver as reflected in any restrictive amendment clauses.

## B. Application

With this analytical framework in hand, we now turn to

the present case.

We begin by determining whether the parties' written contract contemplates the factual circumstances alleged by plaintiff. In interpreting a contract, our obligation is to determine the intent of the contracting parties. *Sobczak v Kotwicki,* 347 Mich 242, 249; 79 NW2d 471 (1956). If the language of the contract is unambiguous, we construe and enforce the contract as written. *Farm Bureau Mut Ins Co of Michigan v Nikkel*, 460 Mich 558, 570; 596 NW2d 915 (1999). Thus, an unambiguous contractual provision is reflective of the parties' intent as a matter of law. Once discerned, the intent of the parties will be enforced unless it is contrary to public policy. *Id.*

First, it is unambiguous in the contract at issue that plaintiff could not receive commissions for the disputed sales. Plaintiff's sales territory under the contract excludes "all House Accounts and: All [t]ransmission plants and other machine tool suppliers (turn key operations)," and plaintiff has conceded that Giddings & Lewis and Ex-Cell-O are excluded machine tool suppliers as contemplated by the contract.

Second, the contract includes a written modification clause, located at ¶ 13(b), which provides:

> This Agreement may not be modified in any way without the written consent of the parties.

14

Plaintiff has not submitted any evidence that the parties agreed *in writing* to modify or waive any provisions of the contract. The facts alleged clearly fall within the ambit of the written modification clause.

Finally, included as ¶ 11 of the contract is the following anti-waiver provision:

> *No delay, omission or failure* of [defendant] to exercise any right or power under this Agreement or to insist upon strict compliance by Representative of any obligation hereunder, and *no custom or practice* of the parties at variance with the terms and provisions hereof *shall constitute a waiver* of [defendant's] rights to demand exact compliance with the terms hereof; nor shall the same affect or impair the rights of [defendant] with respect to any subsequent default of the Representative of the same or different nature. [Emphasis added.]

Viewing the facts most favorably to plaintiff, we must assume that defendant (1) knew that plaintiff was actively soliciting the business of Giddings & Lewis and Ex-Cell-O on behalf of defendant, (2) knew that plaintiff expected commissions on any resulting sales, and (3) failed to object to plaintiff's solicitation of the excluded customers until after sales were completed. Accordingly, plaintiff's proofs establish, at best, knowledge and silence on defendant's part of plaintiff's effort to enlarge plaintiff's rights under the contract. However, defendant's knowing silence clearly falls within the excluded activity covered by the "delay, omission or failure" language of ¶ 11.

15

For these reasons, the parties' written contract contemplates the circumstances alleged by plaintiff.

Nevertheless, although the parties negotiated and consented to contractual terms that fully and precisely contemplate the factual circumstances alleged by plaintiff and explicitly provide the legal effect of those alleged circumstances, plaintiff asks this Court not to enforce those terms. Viewing the alleged facts in a light most favorable to plaintiff, we decline to accommodate plaintiff's request to not enforce the contract.

Following the analytical framework set forth above, plaintiff must present clear and convincing evidence of conduct that overcomes not only the substantive portions of the previous contract allegedly amended, but also the parties' express statements regarding their own ground rules for modification or waiver as reflected in restrictive amendment clauses. Accordingly, plaintiff must establish clear and convincing evidence of a mutual agreement to waive the sales-territory and sales-commissions limitations as well as the written modification and anti-waiver clauses.

Plaintiff's proofs rest on the mere fact that defendant knew about plaintiff's activity inconsistent with the contract and remained silent. Plaintiff has submitted no evidence of representations or affirmative conduct by defendant that it was intentionally and voluntarily relinquishing its right to

16

confine the parties' relationship to the terms of the contract and thus demand strict adherence to the sales-commissions and sales-territory provisions in the contract. Plaintiff has forwarded no evidence that defendant affirmatively accepted plaintiff's sales activity that was inconsistent with the contract as a modification of the contract.

Defendant's mere silence, regardless whether defendant possessed knowledge of plaintiff's sales activity outside the contract, does not here amount to an intentional relinquishment of the sales-territory and sales-commissions limitations in the contract or the contract's restrictive amendment clauses, ¶ 13(b) and ¶ 11. Accordingly, plaintiff has failed to establish waiver of the original contract by any evidence, much less clear and convincing evidence.

Plaintiff advances *Klas* as supportive of its position that knowing silence is sufficient to establish a waiver of a contractual provision. The Court of Appeals agreed with this suggestion.

However, as the circuit court concluded, *Klas* is clearly distinguishable. It was the defendant's agent's *affirmative expressions* of assent, not a course of mere knowing silence, that amounted to a waiver in *Klas*. When the *Klas* plaintiff informed the defendant that permission to do extra work was required to be in writing, the defendant's agent orally responded that "there was no necessity of going back to the

17

contract on that point, that they were not children, they were willing to pay for any work they would order . . . ." *Id.* at 336. This is an affirmative *representation* that the contractual provisions were being waived.[6] Thus, in *Klas,* the defendant's affirmative expression was sufficient to establish a waiver.

Nevertheless, the *Klas* Court proceeded to expound on "implied waivers." Because the *Klas* defendant orally expressed its consent to waive the requirement for written approval of extra work, no discussion of implied waivers was necessary to the resolution of the case. Accordingly, the *Klas* Court's exposition on implied waivers not only mislabels the defendant's express representations as implied conduct, it is obiter dictum.

This is not to say that waiver requires an oral or written expression of amendment. It is well settled that a course of affirmative conduct, particularly coupled with oral or written representations, can amount to waiver. *Minkus v Sarge,* 348 Mich 415, 421-422; 83 NW2d 310 (1957) (holding that an oral request and statement that the request was an "extra"

---

[6]Further, Mr. Ransom Pearce, the individual who had actual authority to contract for defendant in *Klas*, testified, "I ordered Mr. Klas to do the extra work." *Klas, supra* at 338. Defendant's agent, Mr. Chester Pearce, also testified, "Whenever a change was made either at the suggestion of [the plaintiff] or at my suggestion, I talked it over with [Mr. Ransom Pearce] and we agreed to make the change, or not make it as the case may be." *Id.* at 339.

to the contract, coupled with the fact that the disputed matters were "matters of frequent conversation" between the plaintiff and the defendant, was inconsistent with a claim that there was no waiver).  However, we note that waiver and forfeiture are related, but distinct concepts.  *Roberts, supra.*  While waiver requires an intentional and voluntary relinquishment of a known right, a forfeiture is the failure to assert a right in a timely fashion.  *Id.* at 69.  In the present case, plaintiff's alleged facts amount only to forfeiture, which is insufficient to establish clear and convincing evidence of a mutual assent to modify or waive an express contract as a matter of law.

## Conclusion

Simply put, the parties agreed to the terms of their written contract.  Nevertheless, plaintiff seeks to be rewarded for proceeding in direct contradiction to the contract and in the face of the contract's written modification and anti-waiver provisions on no basis other than that defendant was aware of plaintiff's activities.  There is no evidence that defendant affirmatively accepted plaintiff's activities as a modification of the original contract.

In order to find for plaintiff on the facts presented, this Court must refuse to give effect to the express agreement of the parties without clear and convincing evidence of subsequent bilateral consent to alter the existing bilateral

19

agreement.  In other words, this Court would have to allow plaintiff to unilaterally modify a bilateral agreement *and*, in addition, do so in the face of contractual terms that precisely prohibit unilateral modification on the basis of no more than the defendant's knowing silence.  Our obligation to respect and enforce the parties' unambiguous contract absent mutual assent to modify that contract precludes us from doing so.

Accordingly, we hold that the circuit court correctly granted summary disposition for defendant because the parties' contract was not modified by waiver as a result of defendant's silence in the face of knowledge of plaintiff's solicitation activities.  The judgment of the Court of Appeals is reversed.

Robert P. Young, Jr.
Maura D. Corrigan
Clifford W. Taylor
Stephen J. Markman

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

QUALITY PRODUCTS AND
CONCEPTS COMPANY,

    Plaintiff-Appellee,

v                                       No. 119219

NAGEL PRECISION, INC,

    Defendant-Appellant.
_____

KELLY, J. (*concurring in part and dissenting in part*).

    We granted leave to appeal to consider whether a course of conduct, if proven, could constitute a waiver of the written modification and antiwaiver clauses contained in the parties' contract. I concur with the majority's holding that contractual terms may be waived, including written modification and antiwaiver clauses. I concur also with the majority's holding that contractual waiver may be shown by a course of conduct that constitutes clear and convincing evidence.

    I write in dissent because I believe that a contracting

party should be permitted to show waiver of written modification and antiwaiver clauses through a course of conduct constituting estoppel. The proofs would have to demonstrate that one party misled the other into the reasonable belief that he had waived certain conditions of their contract. In addition it would have to be shown that the other party reasonably relied on the misleading behavior. As applied to this case, I would find that a question of fact exists whether defendant led plaintiff to believe that it had waived the portions of the parties' contract that (1) prevented plaintiff from recovering commissions for certain accounts, (2) required a written modification of contract changes, and (3) required any waiver to be in writing. A question of fact exists also concerning whether plaintiff relied on the alleged behavior. Accordingly, I would affirm the decision of the Court of Appeals that set aside the summary disposition for defendant.

## I. DEMONSTRATING WAIVER

Both our case law and modern legal treatises recognize that parties may waive contract clauses by a course of conduct constituting estoppel. Both contemplate that a course of conduct may consist of silence plus knowledge by one party and detrimental reliance by the other over time.

Our Court first considered the proofs necessary to

2

establish a contractual waiver in *Klas v Pearce Hardware &*

*Furniture Co*, 202 Mich 334; 168 NW 425 (1918).  We formulated

the plaintiff's burden by quoting the following among several

sources as authority:

> "Waiver is a matter of fact to be shown by the evidence.  It may be shown by express declarations, or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or it may be shown by a course of acts and conduct, and in some cases will be implied therefrom.  It may also be shown by so neglecting and failing to act as to induce a belief that there is an intention or purpose to waive.  Proof of express words is not necessary, but *the waiver may be shown by circumstances or by a course of acts and conduct which amounts to an estoppel*."  40 Cyc. p. 267. [*Klas, supra* at 339 (emphasis added).[1]]

Modern legal treatises reflect *Klas*'s view that silence

with knowledge can form the basis of a contractual waiver by

estoppel.  American Jurisprudence 2d provides:

---

[1]The majority characterizes as obiter dictum the *Klas* Court's inclusion of a course of conduct in the law of contractual waiver. *Ante* at 20.  I believe this an incorrect reading of the opinion.  The plaintiff in *Klas* alleged waiver consisting of (1) certain oral representations by those working for the defendant, and (2) the defendant's course of conduct.  The Court held that waiver may be shown either expressly or impliedly, without articulating which formed the basis of its decision.  Because we do not know on which basis the *Klas* Court made its decision, the statements or the course of conduct, we should not discard one holding in favor of the other.  The *Klas* Court apparently chose not to rank one over the other, in the belief that, given the facts of the case, a jury might find either or both.  Thus, *Klas*'s discussion of implied waiver is not dictum.  At any rate, it is not essential for my analysis that *Klas* have precedential value. Rather, I cite it for the fact that this Court has recognized the validity of the test that I apply in this case.

[C]ontract provisions may be waived expressly or the waiver may be implied from the acts of the parties. . . . [O]ften [waiver] is sought to be proved by various species of acts and conduct permitting different inferences and not directly, unmistakably, or unequivocally establishing it, in which case it is a question for the jury. An implied waiver exists when there is either an unexpressed intention to waive, which may be clearly inferred from the circumstances, or no such intention in fact to waive, but conduct which misleads one of the parties into a reasonable belief that a provision of the contract has been waived. [17A Am Jur 2d, Manner of waiver, in general, § 656, 663 (1991).]

Williston provides:

[S]ilence or inaction which is coupled with knowledge by the party charged with waiver that the contract's terms have [not] been strictly met, and detrimental reliance by the other, for such a length of time as to manifest an intention to relinquish the known right, may result in a waiver of rights under the contract. [13 Williston, Contracts, Silence, Inaction or Forbearance, § 39.35, p 653-654 (2000).]

This Court should retain the waiver burden set forth in *Klas* and in modern legal treatises. The inquiry into whether a written contract provision has been waived should be directed to the parties' words and behavior that are alleged to demonstrate a revised agreement. Accordingly, I would allow a court to find waiver on the basis of knowing silence, in accordance with the standard set forth in American Jurisprudence 2d:

An implied waiver exists when there is either an unexpressed intention to waive, which may be clearly inferred from the circumstances, *or no such intention in fact to waive, but conduct which*

4

*misleads one of the parties into a reasonable belief that a provision of the contract has been waived.* [17A Am Jur 2d, Manner of waiver, in general, § 656, p 663 (1991) (emphasis added).]

II. The Majority's "Heightened" Evidentiary Requirement

The majority requires that the party charged with showing waiver of a written modification or antiwaiver clause meet a "heightened" standard of proof. *Ante* at 14-15. This is a new notion in the law, concocted out of whole cloth. Not only is it lacking in supporting precedent, it unnecessarily injects confusion into established law.

What compels addition of this heightened standard of proof? Logically, if the parties had decided to amend their agreement, they intended to waive any provisions preventing them from doing so. There should be no need for an additional showing of waiver merely because the contract contains a written modification or antiwaiver clause. Moreover, the existing standard, clear and convincing evidence, already sets a high hurdle for the burdened party.

It appears that the purpose of the "heightened" standard is to enhance the gatekeeping function of the judge, diminishing the role of the jury. Its addition renders more difficult the burden of a party arguing waiver of a written modification or antiwaiver clause to survive summary disposition and reach a jury. The effect is to signal a distrust of any jury's willingness or ability to apply the

5

established standard faithfully.

### III. The Demonstration of Waiver in this Case

In this case, I would find that a question of fact exists about whether a waiver occurred.[2] Because we are reviewing a summary disposition ruling, we judge the evidence in the light most favorable to the nonmoving party, plaintiff. *Maiden v Rozwood*, 461 Mich 109; 597 NW2d 817 (1999). Plaintiff alleges that it repeatedly reported to Rolf Bochsler, defendant's vice-president and chief operating officer, that it was soliciting business for defendant from companies that were excluded from its territory. Defendant knew of plaintiff's efforts, was in a position to benefit financially from them, and repeatedly said nothing to deter plaintiff's efforts. Moreover, defendant accepted without hesitation the money from the sales negotiated by plaintiff to businesses excluded from its territory.

While one instance of mere silence fails to evince the "course of acts and conduct" envisioned in *Klas*, this case involves more than a single instance of mere silence, defendant's arguments notwithstanding. Plaintiff alleges that it repeatedly informed defendant that it was pursuing

---

[2]I dispute the majority's derogatory characterization of plaintiff as a party that seeks to have the Court "not enforce the contract." *Ante* at 18. Rather, plaintiff requests that the Court examine the contract and find that defendant waived certain portions of it.

6

extracontractual accounts prohibited by the parties' contract. Not only did defendant know of plaintiff's activities, it knew that they would inure to its financial benefit. Defendant said nothing. Plaintiff relied on defendant's repeated instances of silence and concluded the sales in question. Defendant took the proceeds, but refused to pay plaintiff its commissions. This course of conduct, if proven, could satisfy the standard described in 17A Am Jur 2d, causing the contract language that prevented plaintiff from recovering the sales commissions to be treated as waived. Accordingly, I would hold that defendant's alleged behavior created a fact question regarding waiver.

### IV. CONSTRUCTION OF THE ANTIWAIVER CLAUSE

I disagree also with the majority's assumption that the antiwaiver clause applies in this case. Under the parties' antiwaiver clause, defendant was entitled to "exact compliance" by plaintiff with the terms of the written agreement, even if it failed consistently to "insist upon strict compliance" by plaintiff.[3] Plaintiff asserts that it

---

[3]The antiwaiver clause states:

No delay, omission or failure of [defendant] to exercise any right or power under this Agreement or to insist upon strict compliance by Representative of any obligation hereunder, and no custom or practice of the parties at variance with the terms and provisions hereof shall constitute a
(continued...)

7

could show that defendant failed to insist on strict compliance by plaintiff; it allowed plaintiff to solicit accounts not available to it under the contract. Defendant infers that, even if plaintiff's allegation is true, defendant was entitled to "exact compliance" by plaintiff. The "compliance" would be, apparently, that plaintiff would refrain from claiming commissions from sales to these accounts. The majority appears to agree with defendant and interprets this reasoning as an obvious application of the contract language as written.

I quite disagree. The antiwaiver clause is not implicated under the facts of this case. Therefore, waiver of it never becomes an issue. The following hypothetical example illustrates how, I believe, the clause should be interpreted: Assume that the same contract exists as in the case before us. Plaintiff seeks to makes sales to company A, which is an excluded company under the parties' agreement. Plaintiff notifies defendant of its activities and defendant is silent. Plaintiff relies on defendant's silence and tries, but is unable, to make the sale. Then, plaintiff seeks to make sales

---

[3](...continued)
waiver of [defendant's] rights to demand exact compliance with the terms hereof; nor shall the same affect or impair the rights of [defendant] with respect to any subsequent default of the Representative of the same or different nature.

8

to company B, another company excluded from plaintiff's territory. This time defendant objects, reminding plaintiff that company B is an excluded account for which plaintiff is not entitled to commissions. Plaintiff makes the sale and claims the commission.

Defendant is entitled to refuse to pay, even though it received the proceeds of the sale. It was entitled to "strict compliance" by plaintiff regarding company B, even though it had failed to "insist upon strict compliance" by plaintiff regarding company A. Its prior "practice . . . at variance with the [contract's] terms . . . [did not] constitute a waiver of [defendant's] right to demand exact compliance with the terms of [of the contract.]" See n 3.

However, if plaintiff had made the sale to company A, defendant could not have successfully relied on the antiwavier clause. When plaintiff attempted to sell to company A, defendant had no "prior practice" of waiving the no-sales-to-excluded-accounts contract provision. Moreover, when contracting, plaintiff surely did not agree that defendant could waive plaintiff's compliance with one provision, then insist on plaintiff's compliance with another if plaintiff, thereby, worked without commission. To read the language as the majority does would mean that the parties contracted that one could cheat the other, something to which they surely did

9

not intend to agree.

Therefore, properly construed, the antiwaiver clause does not apply to the facts of this case and whether it was waived is irrelevant.

## V.   CONCLUSION

I would hold that written modification and antiwaiver clauses in a contract may be waived by a course of conduct. This includes conduct that misleads one party into the reasonable belief that a waiver has occurred and on which the misled party relies, a form of estoppel.  In this case, a waiver may have taken place.  Plaintiff alleges that defendant exhibited repeated instances of silence when it was notified that plaintiff was pursuing sales opportunities forbidden by the contract and plaintiff relied on that conduct as a waiver. If proven, that could suffice to establish that defendant waived the parties' antiwaiver and written modification contract provisions.

The majority disagrees with this dissent on how defendant's course of conduct should be judged.  The heart of our disagreement concerns the role of the jury in deciding contractual waiver cases.  The effect of the majority decision is to authorize and encourage judges to decide close waiver questions, such as whether a defendant's alleged repeated instances of knowing silence constitute waiver.  I would allow

10

a jury to make this determination.  I have faith that juries can understand and apply the waiver burden correctly, and I would give them a chance to do so in this case.  Accordingly, I would affirm the decision of the Court of Appeals that set aside the summary disposition for defendant and remand the case to the trial court.

Marilyn Kelly

CAVANAGH, J.

I concur in the result only.

Michael F. Cavanagh

# STATE OF MICHIGAN

## SUPREME COURT

QUALITY PRODUCTS AND
CONCEPTS COMPANY,

    Plaintiff-Appellee,

v                                                                    No. 119219

NAGEL PRECISION, INC,

    Defendant-Appellant.
_____

WEAVER, J. (*concurring in part and dissenting in part*).

I concur with the majority and Justice KELLY that contractual terms may be waived, including written-modification and antiwaiver clauses. I also concur that, in addition to the fact that contract terms may be waived by the parties' written or oral agreement, waiver may be established by clear and convincing evidence of an intent to waive through the parties' course of conduct.

I disagree with the majority's imposition of a "heightened" burden on a party who relies on a course of conduct to modify a contract that includes a written-modification or antiwaiver clause. *Ante* at 14-15. The

majority's heightened standard is not necessary, because the existing law already requires that waiver by a course of conduct must be established by clear and convincing evidence. Moreover, the majority has failed to justify why the parties' mutual consent to contractual terms addressing waiver or modification methods deserves any greater weight than their mutual consent to any other term of the contract. As noted by Justice KELLY, the apparent purpose of this heightened standard is to make it more difficult to establish that a question of fact exists regarding the intent to waive contract terms.

I dissent separately also because I would hold that defendant's course of conduct, as alleged by plaintiff, establishes a question of fact regarding whether defendant intended to waive the contract requirements, including the written-modification and antiwaiver clauses of the contract at issue. In light of defendant's alleged knowledge of plaintiff's contractually prohibited sales efforts, defendant's silence as those efforts proceeded, as well as defendant's acceptance of payment resulting from plaintiff's efforts, I would allow a jury to determine whether defendant intended to waive the terms of the contract at issue. I would, therefore, affirm the decision of the Court of Appeals that set aside the summary disposition for defendant.

Elizabeth A. Weaver

2