*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANA JOSE,

      Plaintiff/Counterdefendant-
      Appellee,

UNPUBLISHED
December 3, 2019

v

SEBASTIAN MALARZ,

      Defendant/Counterplaintiff-
      Appellant.

No. 347154
Kent Circuit Court
LC No. 17-004766-CH

Before: MARKEY, P.J., and BORRELLO and BOONSTRA, JJ.

BORRELLO, J. (*dissenting*).

In this matter, the trial court and the majority focus on defendant's alleged lack of cooperation. There is nothing per se wrong in such an examination, except if, as here, it leads to conclusions that judicially alter the terms of the initial contract. Additionally, this emphasis on the defendant's alleged lack of cooperation is given far greater weight than the effects of plaintiff's various actions, which, simply stated, demonstrated that she did not accept the option contract (an offer) on its own terms. As such, there was no formation of a binding contract of purchase and sale triggering any obligation by defendant to participate in any sales transaction: defendant's conduct is completely irrelevant at this juncture where the sum total of the evidence shows that plaintiff did not actually intend to go through with purchasing the property unless defendant first agreed to her additional demands. No matter how the majority characterizes plaintiff's requests, I view these additional demands as adding additional contract conditions that are nowhere to be found in the language of the option agreement. Moreover, I find troubling the majority's rule, granting plaintiff the ability to legally enforce any term that is "not prohibited" by the contract. For these reasons, I respectfully dissent.

The evidence introduced at trial reflects that plaintiff expressed a desire to buy the property but that her intent to purchase was, in actuality, conditioned on certain additional requirements being met by defendant *first*. As an aside, it appears from the text messages between the parties that plaintiff's purported "acceptance" was equivocal in any event. It could fairly be understood that plaintiff had indicated that she wanted to buy the property "as soon as"

she sold her other property, and there was no evidence that she ever followed up with defendant afterward by informing him that she had sold the other property and was actually ready to proceed with the purchase of the property at issue in this case.

However, regardless of the level of clarity with which plaintiff expressed her bare aspiration to purchase the property at some unspecified future time, her acts still did not constitute a valid acceptance of the option because plaintiff attempted to impose additional requirements on defendant and the evidence is clear that plaintiff had no intent of proceeding with the purchase until these additional requirements were satisfied. Specifically, plaintiff wanted defendant to provide her with proof that there were no outstanding past-due taxes on the property, she wanted defendant to provide her with a written statement of the "payoff amount" for the property, she wanted to be sure that the property was not subject to any liens, and she wanted assurances that defendant could convey clear title. In essence, she was demanding that defendant convey to her a warranty deed. I do not find any such requirement anywhere in the language of the option. Simply stated, none of these additional demands, prudent as they may have been, were terms contained in the language of the option. Furthermore, plaintiff explicitly testified at trial that she did not want to simply tender payment to defendant by giving him a check because there were "issues with taxes" and she "wanted to make sure that there were no tax liens on the property." Plaintiff also testified that she did not give the money to defendant before the option expired because she "wanted to make sure that [she] got clear title, and he was not going to be able to provide [her] that." According to plaintiff, she expressly told defendant that she could not "just give [him] a check" and that she wanted to "close at a title company." Again, these are all additional demands that were not incorporated into, or even mentioned in the option.

Hence, plaintiff's actions and communications to defendant, when considered objectively, did not reflect an unequivocal acceptance of the *existing* terms of the option to purchase but instead constituted *an attempt to alter the terms of the option* by requiring additional written assurances and information from defendant *before agreeing to go through with the transaction*. "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Klokan*, 273 Mich App at 454 (quotation marks and citation omitted). Based on the record evidence, no reasonable person in defendant's shoes could have understood plaintiff's communications to have evidenced an unequivocal acceptance of the existing minimalistic terms of the option contract, which were simply to "purchase the property for a price of $13,500" at "the end of the 36 month period." "Substantial compliance with the terms of the option is not sufficient to constitute an acceptance of the offer." *Bergman v Dykhouse*, 316 Mich 315, 319; 25 NW2d 210 (1946) (quotation marks and citation omitted).

In *Bergman*, an option to purchase certain real property had been granted to Harry Bergman in an instrument executed on March 20, 1945. *Id*. at 316. The option stated as follows:

> For the sum of $25.00 the receipt of which is hereby acknowledged. The undersigned hereby gives to Harry Bergman an option to purchase the following described property for $2,250.00 cash;—North half of Northwest quarter of Sect. Eleven (11), Township (4), Range Eleven West (11), located in Allegan county, State of Michigan, containing 80 acres, more or less.

In case of a purchase the undersigned agrees to pay one-half of the surveying charges, but not more than $75.00.

Said option to be exercised within thirty (30) days. [*Id*. at 316-317 (quotation marks omitted).]

On April 9, 1945, Bergman purported to accept the option in the following letter sent by John Vander Wal:

In behalf of Harry Bergman we are giving notice that he hereby exercises the option given to him by you under date of March 20, 1945, for the purchase of the following described property for the price of $2,250.00.

N. 1/2 of NW 1/4 of Sec. 11, Township 4, Range 11 West, located in Allegan county, State of Michigan, containing 80 acres more or less.

*We are prepared to close this deal as soon as the abstract can be examined by us to see that you have good legal title to this property. Will you please get in touch with us at once so that we can have the abstract for examination?* [*Id*. at 317 (quotation marks omitted; emphasis added).]

The abstract was delivered to Vander Wal, but the landowner conveyed the property to other buyers on August 13, 1945. *Id*. Bergman tendered the price stated in his option after the property had already been conveyed, and he initiated an action seeking either specific performance of his option to purchase or damages. *Id*. at 317-318.

Our Supreme Court affirmed the dismissal of Bergman's action and reasoned as follows:

The instant option contemplated a cash transaction and was silent as to the furnishing of an abstract. It was required to be exercised within 30 days. Vander Wal's letter of acceptance of April 9th, though delivered within 30 days, altered the terms of the option. Tender of the purchase price was not made within the required time, but nearly four months later. It must therefore follow, as found by the trial judge, that plaintiff did not exercise the option in accordance with its terms, and is not entitled to either specific performance or damages. [*Id*. at 319-320.]

In this case, the option to purchase only gave plaintiff the right to accept an offer to purchase the property for $13,500. It did not contain any terms giving her the right to compel defendant to comply with her additional requests for further information. Defendant clearly did not accept the invitation to engage in further negotiations regarding the potential sale of the property to plaintiff. While plaintiff may have had good reasons for desiring additional information, she could not rely on the option language to provide her with a right to force the sale at the stated price *and with additional conditions*. Therefore, by attempting to alter the terms of the option, plaintiff did not effectuate a valid acceptance of the offer in compliance with its terms, and the option did not ripen into a binding contract for purchase of the property. *Id*.; *Le Baron Homes*, 319 Mich at 313, 315. The evidence clearly reflects that there was no meeting

-3-

of the minds between the parties and that no contract to purchase was formed. *Kloian*, 273 Mich App at 452. The majority reaches the opposite conclusion by cherry picking isolated pieces of testimony and ignoring the effect of the sum total of plaintiff's actions and communications.

Unlike the majority, I find *Bergman* indistinguishable in any material way from the factual circumstances in this case. Although, as the majority states, plaintiff "repeatedly sought to arrange the sale of the property, within the required time frame, in the usual manner of a real estate closing," plaintiff's own trial testimony demonstrates that her attempts to "arrange" the sale were merely demands that defendant comply with her additional conditions and that in reality, she had no intent (and by not being able to place the sale price into an escrow account producing the sale price did not have the financial means to complete the transaction) to go through with the sale unless defendant first met these additional demands. This was similar to the fact pattern presented in the letter in *Bergman* which our Supreme Court used to demonstrate that Bergman had no intent to close on the sale unless he could first examine the abstract to be assured that clear title would be conveyed.

The majority, instead of viewing plaintiff's demands as additional conditions, characterizes them as "inquiries" and further states that "plaintiff was not prohibited by the terms of the option from asking defendant for additional information." I do not subscribe to such an approach to contract interpretation. By trying to incorporate her additional demands into the sales transaction even though they were not part of the option contract, plaintiff did not accept the option in strict compliance with its terms and the option did not ripen into a binding bilateral contract of purchase. *Le Baron Homes*, 319 Mich at 313, 315. The lack of cooperation by defendant to which the majority refers was defendant's refusal to accede to plaintiff's legally unenforceable demands so, regardless of how the majority downplays the significance of plaintiff's additional demands, the majority has effectively ruled that defendant was legally obligated to perform on plaintiff's additional conditions and made these conditions legally enforceable parts of the contract on the ground that the addition of these terms was not expressly prohibited. In my opinion, such a holding creates a problematic new rule by which a party to a contract can legally bind the other party to perform any additional term that is not expressly prohibited by the contract.

Clearly, such a holding is contrary to well-established principles of contract law. An essential element of contract formation is "mutual assent or a meeting of the minds on all the essential terms." *Kloian*, 273 Mich App at 452. "Where mutual assent does not exist, a contract does not exist." *Quality Products & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 372; 666 NW2d 251 (2003). It would be illogical to consider a term that is not even mentioned in the contract to actually be an enforceable part of the parties' mutual agreement simply because the parties did not include contract language expressly prohibiting such a term. Rather, courts enforce unambiguous contractual provisions as written (unless the provision violates law or public policy) and must not rewrite the parties' agreement. *Rory v Continental Ins Co*, 473 Mich 457, 468-470; 703 NW2d 23 (2005).

To be clear, my conclusions in this case are not based on plaintiff's lack of tender per se; the option was silent about precisely when and how the purchase price was to be tendered. As this Court has previously stated,

[w]here the terms of the option require that payment of the purchase money, or a part thereof, accompany the election to exercise the option, such provision must ordinarily be complied with; on the other hand, its terms may merely require that notice be given of the exercise of the option and leave the matter of the payment of the purchase money to be thereafter settled as in the case of the ordinary executory contract of sale. In the first instance payment is a condition precedent to the creation of a contract. In the second, it is a condition subsequent to creation. [*Catsman*, 8 Mich App at 567 (quotation marks and citation omitted).]

Thus, it appears that plaintiff conceivably could have accepted the option and created a valid binding contract before actually tendering payment to defendant. However, in this case, plaintiff's communications with defendant reflected more than a mere attempt to settle "the matter of the payment of the purchase money." Rather, plaintiff was engaging in further negotiations to add additional terms to the contract in the form of warranties and additional assurances from defendant. Plaintiff's attempt to add additional terms and conditions to the agreement evidenced her reluctance to accept the agreement that she had made and her desire to rewrite the option contract rather than accept the option on its terms. Here, plaintiff's failure to express an unequivocal acceptance of the option, expressing instead only an intent to accept the option if her additional conditions were met first, is the decisive factor in this case. In order to accept the option, plaintiff needed to make an unequivocal acceptance of the existing terms of the option—i.e., express an unconditional willingness to purchase the property for $13,500. See *Kloian*, 273 Mich App at 453-454 ("[A]n acceptance sufficient to create a contract arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that purpose.") (quotation marks and citation omitted; alteration in original). There is no evidence that defendant prevented plaintiff from performing such an act of acceptance. Because there was no acceptance, no contract for sale was formed. Because there was no contract for sale, defendant never became legally obligated to cooperate with effectuating a sale of the property. For these reasons, I respectfully dissent.

For the reasons stated above, I would reverse.

/s/ Stephen L. Borrello