**NOT RECOMMENDED FOR PUBLICATION**
File Name: 21a0005n.06

Case No. 19-2335

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| LITTLE CAESAR ENTERPRISES, INC., et al., | ) | |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| LITTLE CAESARS ASF CORPORATION, et al., | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendants-Appellants. | ) | |
| | ) | |

**FILED**
Jan 05, 2021
DEBORAH S. HUNT, Clerk

BEFORE: SUTTON, BUSH, and MURPHY, Circuit Judges.

SUTTON, Circuit Judge. After some of its franchisees fell behind on payments, Little Caesar Enterprises, "Little Caesars" for short, ended their franchise agreements. It sued the franchisees in district court, seeking to obtain monetary damages and to enforce the termination. The district court granted summary judgment in Little Caesars' favor, and we affirm.

Little Caesars is the third-largest pizza chain in the country. As a franchisor, it contracts with franchisees, who run their own shops under the Little Caesars umbrella. As with many national restaurants intent on ensuring quality control and uniform offerings, Little Caesars holds a tight leash on its franchisees. It dictates ingredients, sets prices, and enforces other rules to ensure a predictable and consistent product, slice for slice.

Rollie and Beverly Knox ran several Little Caesars franchises for decades. The couple used at least three corporate entities to govern 20 franchises located in six States.

A franchise agreement governs the relationship between the Knoxes and Little Caesars. The Knoxes agreed to pay weekly royalties to Little Caesars, report their earnings, and purchase pizza ingredients from a Little Caesars affiliate. If they did not comply with the terms, Little Caesars could place them in default. If the Knoxes failed to cure a default within 10 days, Little Caesars could terminate the agreement.

The franchise agreement laid out other roads that could lead to a termination. Little Caesars, for example, could end the agreement if the Knoxes accumulated three or more notices of default in one year. In the event of a termination, the Knoxes agreed to close their Little Caesars restaurants and to pay up to three years of royalties as liquidated damages.

Early in 2017, the Knoxes stopped making timely royalty payments and started violating other provisions of the agreement. In March, May, and June, they received default notices for failing to make timely royalty payments, refusing to produce financial records, and failing to pay for supplies. By June, they owed over $200,000. Little Caesars gave them a chance to cure the defaults, and the Knoxes pledged to do so through a letter from their attorney. Promises made became promises broken, prompting Little Caesars to terminate the franchise agreement and to demand that the Knoxes comply with their post-termination obligations: closing the franchises and paying up liquidated damages, among other duties.

The termination letter explained that, if the Knoxes contested the termination, Little Caesars would seek relief in court. It added that, if the Knoxes continued to operate the franchises during any litigation, Little Caesars would accept payments from them "without waiver of its rights and claims, including the right to enforce the termination of the Franchise Agreements." R.50-10 at 4. The pizza company reserved "all of its post-termination rights until it receive[d] a court order." *Id.*

2

Little Caesars sued the Knoxes in federal district court, alleging breach of contract and other claims. The Knoxes counterclaimed on several fronts. As the proceeding progressed, the Knoxes continued to operate the restaurants. But when the Knoxes stopped making any payments, Little Caesars sought a preliminary injunction to close the restaurants. The court granted the injunction, but the Knoxes largely ignored it. A contempt hearing brought the restaurants to a close. The court granted summary judgment to the company and ordered the Knoxes to render unto Little Caesars $2.6 million in liquidated damages plus other damages and fees.

We review the district court's grant of summary judgment with fresh eyes. At stake is whether the franchise agreement allowed Little Caesars to terminate it in this manner and to collect liquidated damages in the process.

Under the agreement, Little Caesars could terminate in the event of three defaults by the Knoxes in one year or if the Knoxes failed to make an overdue payment within 10 days of receiving written notice. Both conditions, each sufficient, occurred: The Knoxes received three valid notices of default in 2017, and they failed to cure the missed payment triggering the third notice of default within 10 days. The agreement also entitled Little Caesars to liquidated damages. In the event of a default-induced termination, the franchise agreement gave Little Caesars the right to receive up to three years' worth of royalty payments and advertising fees. Nothing in the record indicates the district court erred in setting this figure at $2.6 million.

The Knoxes attempt to counter this conclusion in several ways. They contend that the franchise agreement made this award of liquidated damages premature. As the Knoxes see it, the agreement prohibited Little Caesars from collecting liquidated damages until the stores had closed. By continuing to run their franchises—in defiance of a court order, mind you—the Knoxes claim that they rendered the damages provision unavailable. But that reading of the agreement does not

work. Even if the Knoxes could circumvent the liquidated damages clause by refusing to close their stores (a doubtful proposition), the restaurants had closed by the time the district court granted summary judgment. The agreement plainly permitted Little Caesars to collect royalty payments then.

The Knoxes add that Little Caesars waived its right to terminate the franchise agreement and collect liquidated damages by supplying ingredients during the early stages of the litigation. The district court ruled that the Knoxes failed to "provide any factual or legal support for their argument" below, R.79 at 5 n.2, and the Knoxes fail to offer a sound reason for second-guessing that decision on appeal. The argument rests on a thin reed anyway. The Knoxes would have to show by "clear and convincing evidence" that Little Caesars "knowingly waived enforcement" of the termination provision by supplying ingredients. *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 258 (Mich. 2003). That is a heavy lift. Recall that the termination letter contemplated continued dealings between the parties as they awaited a court order. And it warned the Knoxes not to construe these dealings as a "waiver of" Little Caesars' "rights and claims, including the right to enforce the termination of the Franchise Agreements." R.50-10 at 4. Our court has already rejected a similar argument involving a Little Caesars franchisee. *Little Caesar Enters., Inc. v. Miramar Quick Serv. Rest. Corp.*, No. 19-1860, 2020 WL 4516289, at *3 (6th Cir. June 25, 2020).

The Knoxes also maintain that one of the defendant corporations, Southern Utah Pizza Service, is not liable to Little Caesars because it sold all of its franchises before the Knoxes defaulted. But the Knoxes waited until after the district court granted summary judgment to raise this argument, which is too late. *Thurman v. Yellow Freight Sys., Inc.*, 97 F.3d 833, 835 (6th Cir.

4

1996). At any rate, the record suggests that Southern Utah Pizza Service continued to operate franchises well into the litigation.

That leaves several other arguments: that Little Caesars waived the right to terminate the agreement by agreeing to a repayment plan, that the liquidated damages clause is an unenforceable penalty provision, that Little Caesars failed to mitigate damages, and that Little Caesars named the wrong Southern Utah Pizza Service entity in its complaint. But the Knoxes failed to raise each of these arguments in the district court. That amounts to a forfeiture. They offer no sound basis for treating this as the kind of "exceptional case[]" that overlooks this defect. *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988) (quotation omitted).

One last point, an administrative one at that. Rollie Knox and Southern Utah Pizza Service filed for Chapter 11 bankruptcy after the district court entered judgment. During the pendency of this appeal, Little Caesars successfully converted the Chapter 11 bankruptcy into a Chapter 7 bankruptcy, making the trustees of their estates the real-parties-in-interest here. *See Auday v. Wet Seal Retail, Inc.*, 698 F.3d 902, 904 (6th Cir. 2012). Rollie Knox and Southern Utah Pizza Service say that the trustees prefer these proceedings to continue in the name of the trustees. That substitution is consistent with the publicly available bankruptcy docket, including the bankruptcy court's modification of the automatic stay under 11 U.S.C. § 362, which permitted this appeal to continue. We therefore substitute the trustees for Rollie Knox and Southern Utah Pizza Service under Rule 43 of the Federal Rules of Appellate Procedure.

We affirm.