*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHERRY HILL RECREATION CENTER, INC.,
doing business as CHERRY HILL LANES,

UNPUBLISHED
June 18, 2026
10:50 AM

     Plaintiff-Appellant,

v

No. 374445
Wayne Circuit Court
LC No. 22-004079-CB

CONIFER INSURANCE COMPANY,

     Defendant-Appellee.

Before: BORRELLO, P.J., and M. J. KELLY and ACKERMAN, JJ.

BORRELLO, P.J. (*dissenting*).

I respectfully dissent. In my view, the present posture of this appeal is marked by a preponderance of unresolved legal and factual issues, rather than clear resolutions. The trial court's successive and inconsistent rulings underscore a fundamental lack of coherence and transparency in its underlying legal analysis. Compounding this uncertainty, neither appellant nor appellee has presented an argument that is sufficiently developed or compelling to demonstrate a clear entitlement to the relief sought. It is well established that the function of this Court is not to make initial factual or legal determinations, but rather to review the propriety of such determinations made by the trial court. However, I am able to confidently conclude that the trial court's asserted basis for granting summary disposition in favor of defendant in the order appealed is fundamentally flawed because it is founded on an unequivocally erroneous statement of fact. For that reason, I would reverse the trial court's order. Furthermore, in my judgment, the more prudent course of action considering the current state of the record is to remand this matter to the trial court to allow the trial court the first opportunity to address any other grounds for resolution that the parties may present. For these reasons, I dissent from the majority's opinion.

At issue in this case is the insurance policy issued by defendant to plaintiff, which includes the following provision:

**6. Vacancy**

     **a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sub-lessee and used by the lessee or sublessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

### b. Vacancy Provisions

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

\* \* \*

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

"In interpreting a contract, our obligation is to determine the intent of the contracting parties." *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003). We discern the parties' intent by "examin[ing] the language in the contract, giving it its ordinary and plain meaning if such would be apparent to a reader of the instrument." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 47; 664 NW2d 776 (2003). Unambiguous contracts are enforced as written unless contrary to public policy or in violation of the law. *Quality Prod*, 469 Mich at 375; *Wilkie*, 469 Mich at 51.

My dissent focuses on both the factual findings and legal findings of the trial court. Here, the parties do not dispute that the property damage at issue resulted from a leak in the building's sprinkler system, caused by a frozen pipe. The dispositive provision of the insurance policy at issue states that the insurer (defendant) is not obligated to provide coverage for damage to the building if, and only if, two independent conditions are satisfied: (1) the building was "vacant for more than 60 consecutive days before that loss or damage occur[red]," *and* (2) the insured failed to "protect[] the system against freezing." It is undisputed that plaintiff has conceded the second

condition—failure to protect the system against freezing—has been satisfied. Nonetheless, the plain and unambiguous language of the policy requires satisfaction of both conditions before coverage may be denied. Consequently, plaintiff's concession with respect to the second condition is of no legal consequence unless it is also established that the building was, in fact, vacant as defined by the policy.

The trial court rendered two principal rulings with respect to the question of vacancy under the subject insurance policy. First, the trial court concluded that the COVID-19 emergency orders promulgated by the State of Michigan, which expressly prohibited plaintiff from operating its business in the insured premises, rendered plaintiff legally incapable of conducting its customary operations therein. Consequently, the court further determined that the period during which those emergency orders remained operative—terminating in mid-December 2020—could not be included in calculating the 60-day vacancy period as prescribed by the policy.[1] Notably, defendant does not challenge this legal determination on appeal, having failed to present any argument or authority suggesting that the trial court's analysis in this respect was erroneous.[2] Second, the trial court found that, after the lifting of the COVID-19-related restrictions in December 2020, plaintiff

_____

[1] In its March 19, 2024 written opinion granting summary disposition in favor of defendant, the trial court ruled that there was no genuine dispute of fact that plaintiff did not conduct its customary operations on the premises for 60 days prior to the loss, but the trial court also acknowledged:

> It is true the premises could not be used to conduct customary operations when closed by the State of Michigan. However, the premises could have been used, and were legally allowed to be used when the COVID restriction was lifted far more than 60 days before the loss. They were not so used. There is no genuine issue of material fact the bowling alley never reopened during any phase of the allowed operation, partial or complete and the lack of use of the premises was not due to a State order, but due to Cherry Hill's inability to hire employees to operate the business.

The trial court's written opinion refers to the December 18, 2020 state COVID-19 order that permitted, among other things, bowling alleys to operate again within certain parameters. Accordingly, I understand the trial court to have concluded that it was not considering the time before the COVID-19 restrictions on bowling alleys were lifted to calculate the 60 day period for purposes of determining vacancy under the insurance policy. The record indicates that the relevant December 18, 2020 order lifting the COVID-19 restrictions took effect on December 21, 2020. However, the trial court's reasoning is admittedly far from clear, which is precisely the problem. There simply is not an adequate explanation by the trial court in support of its ruling to allow this Court to provide meaningful appellate *review*. It is not our role to salvage the trial court's ruling by attempting to function as a "superior" trial court.

[2] I express no opinion on whether the trial court's ruling in this regard was legally correct. I also do not mean to imply that defendant was absolutely *required* to do so, nor am I unaware that this Court has the discretion to affirm a trial court's ruling on an alternate ground. In my view, however, it is not prudent to do so on this record.

did not resume customary operations in the building for a duration of 60 consecutive days prior to the date of loss (February 4, 2021).  Based on this finding, the trial court concluded that there was no genuine issue of material fact as to the building's vacancy within the meaning of the insurance policy.  In light of plaintiff's further concession that it failed to take adequate precautions to prevent freezing, the trial court ultimately granted defendant's motion for summary disposition.

Notwithstanding, the trial court's judgment is predicated on a material misapprehension of fact.  The record unequivocally demonstrates that the emergency order authorizing plaintiff to resume operation of the bowling alley was issued on December 18, 2020, and took effect on December 21, 2020.  The subject loss occurred on February 4, 2021.  Thus, it is irrefutable that the interval between the lifting of the COVID-19 restrictions relative to plaintiff's bowling alley and the date of loss was less than 60 days.  Accordingly, the trial court's determination that the building was vacant for more than 60 consecutive days prior to the occurrence of the loss is not supported by the evidentiary record.  For these reasons alone, I would reverse the trial court's grant of summary disposition in favor of defendant and remand for further proceedings consistent with this opinion so that the trial court may fully address any other potential arguments by the parties in the first instance.  "It would be imprudent for this Court to address the merits of the issue without first affording the trial court an opportunity to do so." *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 325; 503 NW2d 758 (1993).

/s/ Stephen L. Borrello