*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

BRONSON HEALTH CARE GROUP, INC.,

        Plaintiff-Appellee,

v

FALLS LAKE NATIONAL INSURANCE
COMPANY,

        Defendant-Appellant,

and

MICHIGAN ASSIGNED CLAIMS PLAN,
MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY, and JOHN DOE
INSURANCE COMPANY,

        Defendants.

UNPUBLISHED
June 23, 2022

No. 356319
Kalamazoo Circuit Court
LC No. 2020-000015-NF

BRONSON HEALTH CARE GROUP, INC.,

        Plaintiff-Appellant,

v

FALLS LAKE NATIONAL INSURANCE
COMPANY,

        Defendant-Appellee,

and

MICHIGAN ASSIGNED CLAIMS PLAN,
MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY, and JOHN DOE
INSURANCE COMPANY,

        Defendants.

No. 356333
Kalamazoo Circuit Court
LC No. 2020-000015-NF

BRONSON HEALTH CARE GROUP, INC.,

        Plaintiff-Appellant,

v

MICHIGAN ASSIGNED CLAIMS PLAN,
MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY, and JOHN DOE
INSURANCE COMPANY,

        Defendants-Appellees.

No.  356334
Kalamazoo Circuit Court
LC No.  2020-000082-NF

---

BRONSON HEALTH CARE GROUP, INC.,

        Plaintiff-Appellee,

v

MICHIGAN ASSIGNED CLAIMS PLAN,
MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY, and JOHN DOE
INSURANCE COMPANY,

        Defendants-Appellees,

and

FALLS LAKE NATIONAL INSURANCE
COMPANY,

        Appellant.

No.  356341
Kalamazoo Circuit Court
LC No.  2020-000082-NF

---

Before:  CAMERON, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

These consolidated appeals[1] involve Bronson Health Care Group, Inc.'s attempt to recover payment of personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.*, for medical services provided to a pedestrian who was involved in a motor vehicle accident. In Docket No. 356319, Falls Lake National Insurance Company appeals the trial court's order granting summary disposition and awarding judgment in favor of Bronson, and the order granting summary disposition in favor of the Michigan Assigned Claims Plan and Michigan Automobile

---

[1] *Bronson Health Care Group, Inc v Falls Lake Nat'l Ins Co*, unpublished order of the Court of Appeals, entered March 23, 2021 (Docket Nos. 356319, 356333, 356334, and 356341).

-2-

Insurance Placement Facility (collectively MAIPF). In Docket No. 356341, Falls Lake again appeals the trial court's order granting summary disposition in favor of MAIPF. In Docket Nos. 356333 and 356334, Bronson also appeals the trial court's order granting summary disposition in favor of MAIPF and dismissing it from the case.

On appeal, Falls Lake argues that the trial court erred by granting summary disposition in favor of Bronson and MAIPF because the insurance policy at issue was effectively canceled before the accident occurred. Moreover, Falls Lake asserts that the trial court erred by awarding Bronson a monetary judgment for its medical charges because a factual dispute remained regarding the reasonableness of the charges and whether the charges were customary. Finally, Falls Lake argues that the trial court erred by awarding Bronson attorney fees because there was factual uncertainty regarding the existence of an insurance policy. Bronson argues that the trial court erred by granting summary disposition in favor of MAIPF and dismissing it from the case because, in the event that Falls Lake succeeds in obtaining a reversal of the order directing Falls Lake to pay Bronson's charges, then it is undisputed that the MAIPF must pay the charges instead. For the reasons explained in this opinion, we affirm the trial court's orders granting summary disposition and judgment in favor of Bronson and summary disposition and dismissal in favor of MAIPF.

## I. FACTS AND PROCEDURAL HISTORY

This case arises out of a vehicle-pedestrian accident that occurred in Kalamazoo, Michigan, in March 2019. Morris House stepped into the street and was struck by a vehicle driven by Oshay Samuel Jackson. House was transported by ambulance to Bronson for medical treatment. According to Bronson's complaint, the charges for the medical treatment provided to House amounted to $59,567.98. It appears that House was not insured and was not domiciled with an insured relative. As a result, Bronson[2] sought to collect payment from Jackson's insurer, Falls Lake. However, Falls Lake denied the claim on the basis that no insurance policy for Jackson was available.

Jackson obtained a no-fault insurance policy from Falls Lake in November 2018. The policy was to remain active from November 21, 2018 until May 21, 2019. On December 7, 2018, Falls Lake sent a letter to Jackson informing him that the policy would be canceled if the monthly premium was not paid by December 21, 2018. It appears that Jackson failed to pay the monthly premium for the policy, and Falls Lake considered the policy canceled for nonpayment as of December 22, 2018. On January 7, 2019, Falls Lake sent Jackson a check for $14.87. The document's comment line stated that it was a refund on Jackson's account, followed by his account number. The second line stated "REFUND ON CANCELLED POLICY." Jackson cashed the check on January 17, 2019.

Bronson filed a complaint against Falls Lake seeking payment for the medical services provided to House following the accident. In addition to the principal amount of $59,567.98, Bronson sought interest, costs, and attorney fees because Falls Lake unreasonably denied or

---

[2] House assigned his right to pursue payment of his medical bills to Bronson.

delayed payment. In addition, Bronson filed a similar complaint against MAIPF,[3] noting that Falls Lake denied its claim, but contending that it was still entitled to payment for the medical services provided to House. The trial court consolidated the cases against Falls Lake and MAIPF.

The parties filed cross motions for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). In Falls Lake's motion, it argued that it was entitled to summary disposition because there was no question that the policy was canceled because of nonpayment before the accident occurred. According to Falls Lake, Jackson cashed the premium refund check, which constituted his mutual assent to cancellation of the policy.

Bronson argued that it was entitled to summary disposition against Falls Lake because Falls Lake's purported cancellation notice was sent 14 days before payment of the premium was due. As a result, the preemptive cancellation notice did not comply with the strict requirements of MCL 500.3020(1)(b). MAIPF agreed with Bronson in regard to Falls Lake's responsibility for House's no-fault benefits. MAIPF argued that, contrary to Falls Lake's contention, the policy was never canceled in the manner required by MCL 500.3020, and, as such, coverage remained in effect during the time that House was injured in the accident with Jackson. In addition, MAIPF moved for summary disposition against Bronson. According to MAIPF, because Bronson was entitled to coverage through Falls Lake, MAIPF could not, as a matter of law, be liable for payment of no-fault benefits for House's medical expenses. Therefore, MAIPF asked to be dismissed from the case.

In a hearing concerning the parties' motions for summary disposition, the trial court first concluded that Falls Lake's cancellation of the policy was not sufficient under the statute, and therefore, Falls Lake was responsible for payment of no-fault benefits to Bronson. The court explained that MCL 500.3020 required that the insured be provided with notice that included a window in which he or she can either cure the default or obtain other insurance. The trial court did not believe that cashing the refund check constituted an acceptance of the cancellation. As a result, the policy remained active at the time the accident occurred. Accordingly, the trial court determined that Bronson was entitled to summary disposition against Falls Lake. In regard to the actual charges sought by Bronson, the court observed that there was no evidence that Falls Lake ever challenged the claimed amount, and the court would not allow such a challenge to be raised later. In addition, the court would allow Bronson to collect costs and attorney's fees. The court asked Bronson to submit documentation in regard to those costs and fees and noted that Falls Lake could challenge those amounts if necessary. The court's judgment awarded Bronson $59,567.98 for medical expenses, $11,525.98 for 12% penalty interest, and $215 in taxable costs (for a total of $71,308.96).

In regard to MAIPF's motion for summary disposition, the trial court explained that because Falls Lake was identified as the responsible insurer, MAIPF was not required to provide any coverage. Therefore, there was no reason for MAIPF to continue as a party in the case.

---

[3] Bronson also named John Doe Insurance Company as a party in its complaint because MAIPF had not assigned an insurance company to administer the claim on its behalf. See MCL 500.3172.

Accordingly, the trial court granted MAIPF's motion for summary disposition and dismissed MAIPF from the case.

These appeals followed.

## II. ANALYSIS

### A. STANDARD OF REVIEW

This Court reviews a trial court's ruling on a motion for summary disposition de novo. *Auto Club Group Ins Co v Burchell*, 249 Mich App 468, 479; 642 NW2d 406 (2001). When reviewing a motion brought pursuant to MCR 2.116(C)(10), a court "must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence in favor of the party opposing the motion." *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 202; 544 NW2d 727 (1996). In addition, a "court's task is to review the record evidence, and all reasonable inferences drawn from it, and decide whether a genuine issue regarding any material fact exists to warrant a trial." *Id*. A genuine issue of material fact exists when the record, "giving the benefit of reasonable doubt to the opposing party, would leave open an issue upon which reasonable minds might differ." *Shallal v Catholic Social Servs of Wayne Co*, 455 Mich 604, 609; 566 NW2d 571 (1997) (quotation marks and citations omitted). However, the court may not "assess credibility" or "determine facts on a motion for summary judgment." *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994).

### B. CANCELLATION OF FALLS LAKE INSURANCE POLICY

First, Falls Lake argues that the trial court erred by granting Bronson's motion for summary disposition because the insurance policy at issue was effectively canceled before the accident occurred, and therefore, Falls Lake is not responsible for payment of the medical charges incurred for House's treatment. We disagree.

> When interpreting an insurance policy, [t]he policy and the statutes relating thereto must be read and construed together as though the statutes were a part of the contract, because the parties are presumed to have contracted with the intention of executing a policy that complies with the related statutes. [*Yang v Everest Nat'l Ins Co*, 507 Mich 314, 321; 968 NW2d 390 (2021) (quotation marks and citations omitted; alteration in original.]

In this case, the parties dispute the requirements of MCL 500.3020, which concerns the cancellation of an insurance policy. In pertinent part, MCL 500.3020 provides:

> (1) A policy of casualty insurance . . . including all classes of motor vehicle coverage, shall not be issued or delivered in this state by an insurer authorized to do business in this state for which a premium or advance assessment is charged, unless the policy contains the following provision[]:

> \* \* \*

(b) Except as otherwise provided in subdivision (d), that the policy may be canceled at any time by the insurer by mailing to the insured at the insured's address last known to the insurer or an authorized agent of the insurer, with postage fully prepaid, a not less than 10 days' written notice of cancellation with or without tender of the excess of paid premium or assessment above the pro rata premium for the expired time.

In keeping with the statute, Jackson's Falls Lake insurance policy contained the following provision:

Cancellation—This Policy may be canceled during the policy period as follows:

* * *

2. **We** may cancel by mailing **you** at the address last known by **us** or **our** producer:

a. at least 10 days [sic] notice by first class mail, if cancellation is for non-payment of premium . . . .

In a case with similar facts, this Court held "that a notice of cancellation sent before the time for making the premium payment has passed does not satisfy MCL 500.3020(1)(b)." *Yang v Everest Nat'l Ins Co*, 329 Mich App 461, 472; 942 NW2d 653 (2019), aff'd 507 Mich 314 (2021). In support of its decision, this Court observed that "MCL 500.3020(1)(b) does not merely require that the insurer include a cancellation provision in the policy, it also imposes an affirmative duty on the insurer to comply with the notice requirements found in the statute." *Id*. at 468. Further, this Court concluded that "[f]or cancellation to be based upon nonpayment, nonpayment must have occurred." *Id*. at 469 (quotation marks and citation omitted). As a result, "when a notice of cancellation is sent before nonpayment of premium, it is not informing the insured that the policy is canceled, but rather that cancellation is contingent upon a future event." *Id*. (Quotation marks and citation omitted). In other words, as this Court observed, "it is not sufficient that the insurer warn the insured that a future failure to pay the premium will result in cancellation; rather, it must advise the insured that because of an already-occurred failure to pay, the policy will be canceled in ten days." *Id.* at 470.

This Court believed that its reasoning was consistent with the Supreme Court's statements in regard to the intent of MCL 500.3020. *Id*. In *Lease Car of America, Inc v Rahn*, 419 Mich 48, 54; 347 NW2d 444 (1984), the Supreme Court stated:

The obvious objective of [MCL 500.3020] is to make certain that all of those who are insured under a policy are afforded a period of time, ten days, either to satisfy whatever concerns have prompted cancellation and thus revive the policy or to obtain other insurance, or simply to order their affairs so that the risks of operating without insurance will not have to be run. That objective cannot be achieved if the insurer, pursuant to policy language, need only notify a designated insured that cancellation is imminent.

Accordingly, in *Yang*, 329 Mich App at 470, this Court stated that it was only after the policy was canceled for nonpayment that the insured could be afforded the required 10 days' notice to cure the reason for cancellation. As a result, this Court held that "a notice of cancellation sent before the time for making the premium payment has passed does not satisfy MCL 500.3020(1)(b)." *Id*. at 472.

The Michigan Supreme Court affirmed this Court's opinion in *Yang*, 507 Mich at 316. The Supreme Court interpreted "the phrase 'notice of cancellation,' as used in MCL 500.3020(1)(b), to require cancellation notices to be peremptory, explicit, and unconditional." *Id*. at 325-326. The Court concluded that because the cancellation was conditioned on the plaintiff's failure to pay the premium on time, the letter was not a valid cancellation notice under MCL 500.3020(1)(b). *Id*. at 326. "Therefore, because [the insurance company] did not comply with MCL 500.3020(1)(b), [the plaintiff's] insurance policy was still in effect at the time of the accident." *Id.*

In this case, even Falls Lake concedes that the December 7, 2018 notice it sent to Jackson was not a valid cancellation notice under *Yang* because it was sent before the premium payment was due. See *id*. However, Falls Lake contends that the premium refund check served as proper notice of cancellation and that Jackson agreed to the cancellation because he cashed the check. This argument is unavailing because MCL 500.3020(1)(b) requires that the insured be provided with 10 days' notice of the cancellation in order to reinstate the policy or obtain different insurance. *Lease Car of America, Inc*, 419 Mich at 54. In other words, an effective notice must advise "that because of an already-occurred failure to pay, the policy will be canceled in ten days." *Yang*, 329 Mich App at 470.

Moreover, both this Court and the Supreme Court rejected a similar assertion in *Yang*. In that case, the insurance company alleged that an October 30, 2017 letter offering to reinstate the policy served as an effective notice of cancellation. The Supreme Court disagreed, acknowledging that although the offer described an unconditional cancellation, it did not comply with MCL 500.3020(1)(b) because the statute requires that the notice be sent at least 10 days before the policy is canceled. *Yang*, 507 Mich at 326 n 6. See also *Nowell v Titan Ins Co*, 466 Mich 478, 488; 648 NW2d 157 (2002) (stating that "the notice must be mailed so as to be reasonably calculated to arrive at the appropriate address at least ten days before the cancellation date"). As explained by the Supreme Court in *Yang*, 507 Mich at 326 n 6, "the October 30 letter did not give that 10-day period; instead, it declared that the policy had already been cancelled and that the cancellation was already effective. It was insufficient to serve as a notice of cancellation under MCL 500.3020(1)(b)." Therefore, Falls Lake's contention that the premium refund check served as adequate notice of cancellation is erroneous.

Further, to the extent that Falls Lake asserts that Jackson cashing the refund check established his agreement or assent to the cancellation of the policy, there is no evidence in the record indicating Jackson's state of mind or understanding. "[P]arties to a contract are free to mutually waive or modify their contract . . . ." *Quality Prod and Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 364; 666 NW2d 251 (2003) (emphasis omitted). However, "a party alleging waiver or modification must establish a mutual intention of the parties to waive or modify the original contract." *Id*. at 372. "The mutuality requirement is satisfied where a modification is established through clear and convincing evidence of a written agreement, oral agreement, or

-7-

affirmative conduct establishing mutual agreement to waive the terms of the original contract." *Id*. at 373.

In this case, although Jackson cashed the premium refund check, the document only stated that the refund was for the canceled policy. There was no indication that cashing the check constituted agreement to the policy's cancellation or waiver of the 10 days' notice requirement in MCL 500.3020(1)(b). Rather, like the offer to reinstate the policy in *Yang*, 507 Mich at 326 n 6, the check indicated that the policy was unconditionally canceled. In other words, it is possible that Jackson believed that the policy had been definitively canceled and he did not have a choice in the matter. In any event, the record does not contain clear and convincing evidence establishing Jackson's agreement to cancel the policy. See *Quality Prod and Concepts Co*, 469 Mich at 380 (holding that "the parties' contract was not modified by waiver as a result of [the] defendant's silence in the face of knowledge of [the] plaintiff's solicitation activities").

Accordingly, the trial court properly granted summary disposition in favor of Bronson because Falls Lake failed to comply with the notice requirements in MCL 500.3020(1)(b) to effectively cancel the policy; therefore, the insurance policy was still in effect at the time of the accident.

## C. MEDICAL CHARGES

Next, Falls Lake asserts that there was a genuine issue of material fact as to whether Bronson's requested medical charges were reasonable. We disagree.

MCR 2.116 pertains to motions for summary disposition. MCR 2.116(B)(1) provides that "[a] party may move for dismissal of or judgment on all or part of a claim in accordance with this rule." MCR 2.116(C)(10), one of the grounds in which a motion for summary disposition may be based, requires that "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." Further, MCR 2.116(G)(4) states the following:

> A motion under subrule (C)(10) must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact. When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her.

As explained by our Supreme Court, "[t]he court rule plainly requires the adverse party to set forth specific facts at the time of the motion showing a genuine issue for trial." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7-8; 890 NW2d 344 (2016).

Falls Lake's obligation to pay Bronson for medical care provided to House arises out of several sections of the no-fault act.[4]  MCL 500.3105(1) states that "an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle . . . ."  In pertinent part, MCL 500.3107(1)(a) provides that "personal protection insurance benefits are payable for . . . [a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."  MCL 500.3157(1) explains, in pertinent part, that

> a physician, hospital, clinic, or other person that lawfully renders treatment to an injured person for an accidental bodily injury covered by personal protection insurance . . . may charge a reasonable amount for the treatment or training.  The charge must not exceed the amount the person customarily charges for like treatment or training in cases that do not involve insurance.

"Under this statutory scheme, an insurer is not liable for any medical expense that is not both reasonable and necessary." *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 374; 670 NW2d 569 (2003), aff'd 472 Mich 91 (2005).  "The reasonableness of the charge is an explicit and necessary element of a claimant's recovery against an insurer, and, accordingly, the burden of proof on this issue lies with the plaintiff." *Id*.  This Court acknowledged that the statute does not define what is "reasonable" in this context; therefore, "insurers must determine in each instance whether a charge is reasonable in light of the service or product provided." *Id*. at 379.  This Court further explained that "[i]t may be that a health-care provider's 'customary' charge is also reasonable given the services provided, while at other times the 'customary' charge may be too high, and thus unreasonable.  Either way, the trier of fact will ultimately determine whether a charge is reasonable." *Id*.

In this case, Bronson submitted billing forms and medical records concerning its treatment of House to Falls Lake in March and April 2019.  In its motion for summary disposition, Bronson asserted that those forms and records constituted reasonable proof of the charges to which it was entitled.  Further, Bronson also cited deposition testimony from Jason Miller, a claims adjuster for Falls Lake, who stated that Falls Lake's denial of the claim was based solely on the fact that the policy had been canceled at the time the loss occurred.  He explained that the specific charges sought by Bronson had not been investigated, and he had no reason to believe that the charges were unreasonable.

In response, Falls Lake alleged that Bronson failed to establish that its charges were reasonable, but Falls Lake failed to specify which charges were unreasonable or explain why those charges were unreasonable.  Moreover, Falls Lake did not provide any documentary evidence showing that any of the charges were unreasonable or presenting specific facts to show that there was a dispute of material fact over whether the charges were reasonable.  "A party opposing a motion for summary disposition must present more than conjecture and speculation to meet its burden of providing evidentiary proof establishing a genuine issue of material fact." *Cloverleaf*

---

[4] Certain sections of the no-fault act, including MCL 500.3107 and MCL 500.3157, were amended by 2019 PA 21 (effective June 11, 2019), which occurred after the accident but before this lawsuit was filed.  The changes are not pertinent to the resolution of the issues in this appeal.

*Car Co v Phillips Petroleum Co*, 213 Mich App 186, 192-193; 540 NW2d 297 (1995). Accordingly, because Falls Lake failed to present any evidence which established specific facts showing that there is a genuine issue for trial in response to Bronson's motion for summary disposition, the trial court properly granted summary disposition in Bronson's favor.

## D. ATTORNEY FEES

Finally, Falls Lake argues that the trial court abused its discretion by awarding attorney fees to Bronson. We disagree.

"A trial court's decision to grant or deny a motion for attorney fees presents a mixed question of fact and law." *Brown v Home-Owners Ins Co*, 298 Mich App 678, 689-690; 828 NW2d 400 (2012). "This Court reviews the trial court's findings of fact for clear error, and questions of law de novo." *Id*. at 690. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake was made." *Id*. (Quotation marks and citation omitted). "However, this Court reviews for an abuse of discretion a trial court's ultimate decision whether to award attorney fees." *Id*. "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*. (Quotation marks and citation omitted).

In cases involving a dispute over payment of no-fault benefits, MCL 500.3148(1) permits a claimant to obtain attorney fees from an insurer "if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment." In *Moore v Secura Ins*, 482 Mich 507, 517; 759 NW2d 833 (2008), the Michigan Supreme Court observed that

> MCL 500.3148(1) establishes two prerequisites for the award of attorney fees. First, the benefits must be overdue, meaning "not paid within 30 days after [the] insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). Second, in postjudgment proceedings, the trial court must find that the insurer "unreasonably refused to pay the claim or unreasonably delayed in making proper payment." [Alteration in original.]

"If a claimant establishes the first prerequisite, a rebuttable presumption arises regarding the second." *Brown*, 298 Mich App at 690-691. In that case, "[t]he insurer then bears the burden of justifying the refusal or delay." *Id*. at 691. "An insurer may justify its refusal to pay a claimant benefits by showing that the claim presented a legitimate question of statutory construction, constitutional law, or factual uncertainty." *Id*. The court's "ultimate decision that the insurer owed benefits to the claimant does not alone establish the unreasonableness of the insurer's initial decision." *Id*. "Rather, the court must examine the circumstances as they existed at the time the insurer made the decision, and decide whether that decision was reasonable at that time." *Id*.

After ruling that Falls Lake was responsible for payment of the medical charges incurred by House's medical treatment, the court merely stated that Bronson was permitted to provide a bill of costs and attorney fees, and that Falls Lake was entitled to challenge those fees. The trial court made no findings of fact and provided no analysis with regard to whether the delay in payment was unreasonable. In any event, the order granting Bronson's motion for summary disposition

also stated that the trial court found that Falls Lake's denial of payment was unreasonable and that Bronson was entitled to attorney fees under MCL 500.3148(1). See *id.*

Falls Lake argues that the trial court erred by awarding attorney fees in this case because there was a factual uncertainty regarding whether the policy existed at the time of the accident. However, notwithstanding *Yang*, Falls Lake's purported cancellation of its policy did not comport with the actual policy language. The policy obtained by Jackson contained a cancellation provision as required by MCL 500.3020(1)(b), and Jackson was not in default of the policy with respect to premium payments at the time the December 7, 2018 notice was sent. As a result, it was impossible for Falls Lake to comply with the policy's 10-day notice provision by mailing a cancellation notice for nonpayment of a premium before Jackson failed to make the necessary payment. Rather, the notice merely concerned the future possibility of nonpayment, and it was not until Jackson actually missed the due date for making the premium payment that it became feasible for Falls Lake to send a true notice of cancellation for nonpayment of the premium. See *Yang*, 329 Mich App at 473 (SWARTZLE, J., concurring) (explaining that the trial court's order could be affirmed on the basis of the language of the specific insurance contract).

Moreover, longstanding existing caselaw establishes that a notice of cancellation must be unconditional to be effective. *American Fidelity Co v R L Ginsburg Sons' Co*, 187 Mich 264, 276; 153 NW 709 (1915). In this case, the December 7, 2018 notice of cancellation was conditioned on Jackson's future failure to pay the premium, and did not constitute an effective notice of cancellation. In addition, even accepting Falls Lake's assertion that the refund check could serve as a notice of cancellation, it also appears that the cancellation was conditioned on Jackson cashing the check. Therefore, even considering what was known to Falls Lake in March and April of 2019, when it denied Bronson's claim for benefits, its denial was unreasonable considering the language of its own policy and longstanding caselaw. Accordingly, the trial court did not abuse its discretion by ruling that Bronson was entitled to attorney fees.

E. MAIPF

Lastly, Bronson contends that if this Court agrees with Falls Lake's position on appeal, all medical charges must be paid by MAIPF because Bronson is entitled to payment for the treatment provided to House. However, because Falls Lake is responsible for payment of Bronson's medical charges, it was unnecessary for MAIPF to be involved in the case and the trial court properly granted MAIPF's motion for summary disposition.

"When an injured person is not covered by his or her own insurance policy or a policy owned by a relative, the Legislature provided that the insurers of the various vehicles involved or occupied during the accident, or the insurers of persons operating such vehicles, must cover the loss." *Spectrum Health Hosps v Mich Assigned Claims Plan*, 330 Mich App 21, 32; 944 NW2d 412 (2019), citing MCL 500.3114(2)-(5) and MCL 500.3115. If no insurance is applicable to the injury, "[a] person entitled to [a] claim because of accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle . . . may claim personal protection insurance benefits through the assigned claims plan." MCL 500.3172(1)(a).

As explained earlier in this opinion, the trial court properly granted Bronson's motion for summary disposition, which determined that Falls Lake failed to effectively cancel the policy

before the accident occurred and that Falls Lake was responsible for payment of medical charges. As a result, because other insurance applies, Bronson is not entitled to benefits from MAIPF and MAIPF was properly dismissed from this case. Accordingly, the trial court's grant of summary disposition in favor of MAIPF was proper.

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola