*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GREAT LAKES EYE INSTITUTE, PC,

      Plaintiff/Counterdefendant-Appellee/
Cross-Appellant,

UNPUBLISHED
March 14, 2024

v

DAVID B. KREBS, M.D.,

      Defendant/Counterplaintiff-
Appellant/Cross-Appellee.

No. 361575
Saginaw Circuit Court
LC No. 08-002481-CK

Before: HOOD, P.J., and LETICA and MALDONADO, JJ.

LETICA, J. (*concurring in part, dissenting in part*).

I would affirm in full the circuit court's well-reasoned and thorough orders. I accept the factual background set forth by the majority and agree with its analysis with the exception of part II.B.4. In my view, neither the law-of-the-case doctrine nor the rule of mandate prevented the trial court from considering and relying on the direct assignment of Dr. David Krebs's agreement from Great Lakes Eye, PC ("GLE") to Great Lakes Eye Institute, PC ("GLEI") ("Assignment 3") as a relevant factor to support reducing Dr. Krebs's attorney-fee award to $0.[1] Consequently, the trial court did not abuse its discretion in awarding that amount. See *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016).

Following an evidentiary hearing, the trial court determined that, although the specified factors in *Pirgu* did not require an adjustment in the amount of attorney fees owed, it was appropriate to consider Assignment 3 as an additional relevant factor, *id*. at 281. The court stated that Dr. Krebs had asserted that his employment agreement had not been effectively assigned to GLEI, and he had prevailed on the basis of that argument, but he had in fact signed a written

---

[1] Although the majority discusses the rule of mandate as to GLEI's argument that the trial court should have reinstated judgment in its favor, part II.C., it does not address Dr. Krebs's contention that the rule of mandate applies because it accepts his argument that the law-of-the-case doctrine affords him relief.

assignment. The court questioned how it could award Dr. Krebs attorney fees as a prevailing party when he had prevailed on "a false premise," since he had actual or constructive knowledge that he had signed the agreement. The court determined that the factor "wholly displace[d] considerations otherwise favoring an award." Because the trial court justified its use and consideration of Assignment 3, in my view, it was entitled to rely on Assignment 3 as a factor to support reducing Dr. Krebs's attorney-fee award. *Id.*

To the extent that Dr. Krebs argues that it was unfair to allow GLEI to produce a questionable document at such a late stage in the proceedings, I disagree. Dr. Krebs's fairness argument implicates his right to due process of law. The essential purpose of due process is to ensure fundamental fairness. *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009). The purpose of an evidentiary hearing is to assist the court in making an informed decision about a factually disputed issue. See *Parks v Parks*, 304 Mich App 232, 240; 850 NW2d 595 (2014).

In this case, Assignment 3 was admitted at the hearing on GLEI's successor liability. The attorney who represented Dr. Farhad Shokoohi and his business entities testified that he had prepared Assignment 3. Dr. Krebs also testified about Assignment 3 at the hearing, and he agreed that he had previously stated that the document contained his signature. He stated that he did not remembered signing it. The trial court was permitted to hold an evidentiary hearing to admit and consider this evidence, and doing so was not unfair when Dr. Krebs had the opportunity to cross-examine the preparer of the document, challenge its authenticity, and offer testimony about it at the hearing.

Dr. Krebs briefly argues that GLEI waived any reliance on Assignment 3 because it could have produced the document earlier in the case. A waiver is a voluntary, intentional abandonment of a known right. *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 374; 666 NW2d 251 (2003). A contractual provision is waived when a course of conduct provides clear and convincing evidence that the "contracting party, relying on the terms of the prior contract, knowingly waived enforcement of those terms . . . ." *Id*. There is no indication that GLEI voluntarily or intentionally abandoned an argument that Dr. Krebs's employment agreement had been validly assigned to GLEI. To the contrary, GLEI repeatedly attempted to argue that Dr. Krebs was bound by his employment agreement although GLEI relied on the blanket assignments ("Assignment 1" and "Assignment 2") to do so. *Great Lakes Eye Institute, PC v Krebs*, unpublished per curiam opinion of the Court of Appeals, issued April 16, 2015 (Docket No. 320086) (*Krebs II*), pp 2-3. GLEI did not waive this argument.

Dr. Krebs further argues that the law-of-the-case doctrine or the rule of mandate barred the trial court from considering Assignment 3 because doing so would be contrary to this Court's previous determination that his employment agreement had not been assigned. Unlike the majority, I conclude that these arguments lack merit because none of this Court's previous opinions considered issues regarding Assignment 3 or attorney fees, and this Court expressly ordered the trial court to determine GLEI's liability for fees under the employment agreement.

The law-of-the-case doctrine and rule of mandate are distinct. *Int'l Business Machines Corp v Dep't of Treasury*, 316 Mich App 346, 352; 891 NW2d 880 (2016). The law-of-the-case doctrine provides that, if this Court has ruled on a particular issue, this Court generally will not

decide an issue differently during a subsequent appeal in the same case. *Id*. at 351. "The primary purpose of the doctrine is to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Lenawee Co v Wagley*, 301 Mich App 134, 150; 836 NW2d 193 (2013) (quotation marks and citation omitted). But this doctrine applies "only to issues actually decided, either implicitly or explicitly, in the prior appeal." *Grievance Admin v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000). And our Supreme Court recently explained:

> The law-of-the-case doctrine " 'merely expresses the practice of courts generally to refuse to reopen what has been decided, *not a limit to their power*.' " *Locricchio* [*v Evening News Ass'n*], 438 Mich [84,] 109[; 476 NW2d 112 (1991)] (emphasis added), quoting *Messenger v Anderson*, 225 US 436, 444; 32 S Ct 739; 56 L Ed 1152 (1912). We also heed the United States Supreme Court's astute observation that the "doctrine does not apply if the court is convinced that its prior decision is clearly erroneous and would work a manifest injustice." *Pepper v United States*, 562 US 476, 506-507; 131 S Ct 1229; 179 L Ed 2d 196 (2011) (quotation marks, citations, and brackets omitted). [*Rott v Rott*, 508 Mich 274, 287-288; 972 NW2d 789 (2021).]

In contrast, under the rule of mandate, "a lower court must strictly comply with, and may not exceed the scope of, a remand order." *Int'l Business Machines Corp*, 316 Mich App at 352. After being ordered to issue judgment in favor of a party, the trial court may not allow renewed litigation. *Id*. Unlike the law-of-the-case doctrine, the rule of mandate is not discretionary and limits the power of the lower court. *Id*. at 353.

Beginning with the law-of-the-case doctrine, this Court's previous holdings did not address whether Dr. Krebs's employment agreement could have been or was in fact directly assigned from GLE to GLEI. This Court considered that an assignment of Dr. Krebs's employment to Dr. Shokoohi as an individual would have breached the language of the employment agreement, which provided that the agreement could not be assigned, "other than to P.C., limited liability company or partnership, or general partnership in which Farhad Shokoohi is the controlling shareholder, member or partner, respectively." *Krebs II*, unpub op at 2. Therefore, this Court concluded the blanket assignment of assets from GLE to Dr. Shokoohi (Assignment 1), and the blanket assignment of assets from Dr. Shokoohi to GLEI (Assignment 2), could not have assigned Dr. Krebs's employment agreement to GLEI because the contract had not been assigned to one of the specified types of business entities. *Id*. at 3. Further, Dr. Krebs's employment agreement had not been an "asset" for the purposes of the blanket assignments. *Id*. at 4. Also see *Great Lakes Eye Institute, PC v Krebs*, unpublished per curiam opinion of the Court of Appeals, issued January 1, 2018 (Docket No. 335405) (*Krebs III*), pp 3-4 (explaining the holdings in *Krebs II*). This Court did not actually decide that Dr. Krebs's contract had never in fact been assigned to GLEI, it simply decided that the blanket assignments were not effective to assign his contract. Further, any questions concerning Assignment 3 could not have been implicitly or explicitly decided in the previous appeal because Assignment 3 did not surface until the evidentiary hearings after remand. Consequently, the law-of-the-case doctrine did not bar the court from considering Assignment 3.

Regarding the rule of mandate, Dr. Krebs argues that the trial court's decision exceeded the scope of this Court's remand order. In this case, this Court expressly ordered the trial court to determine "whether plaintiff is liable for defendant's attorney fees under Section 18 of that contract." *Krebs III*, unpub op at 6. Again, the purpose of an evidentiary hearing was to help the trial court determine disputed factual issues. *Parks*, 304 Mich App at 240. The trial court did not exceed the scope of this Court's remand order by holding an evidentiary hearing to help it determine whether GLEI was liable for Dr. Krebs's attorney fees, and for the reasons previously discussed, the trial court did not err by considering Assignment 3 when doing so.

Dr. Krebs next argues that Assignment 3 could not have assigned his employment agreement to GLEI in 2000 because that company did not exist until 2001. "A party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim." *Caldwell v Chapman*, 240 Mich App 124, 132-133; 610 NW2d 264 (2000). Dr. Krebs has abandoned this argument by failing to support it. GLEI was an assumed name of Shokoohi Eye Center, PC ("SEC"), as of December 1999, and Dr. Krebs's employment agreement was assigned to GLEI in 2000, but SEC simply did not amend its articles of incorporation to officially change the corporate name to GLEI until 2001. Dr. Krebs has provided no authority addressing whether an assignment to a company under an assumed name can be effective, and I decline to attempt to discover or rationalize the basis for this claim. *Id*.

Next, Dr. Krebs argues that, regardless of the assignment, GLEI would not have been able to assert a breach-of-contract claim against him because GLEI first breached the contract by failing to offer him an ownership opportunity. This Court has previously decided that Dr. Krebs failed to counterclaim that he had not been given the option to purchase stock in GLEI and held that, "[b]ecause there was no first breach of the employment agreement by [GLEI], Shokoohi's alleged sexual relationships with members of [GLEI's] staff is not relevant to any issue in the case." *Great Lakes Eye Institute, PC v Krebs*, unpublished per curiam opinion of the Court of Appeals, issued February 1, 2011 (Docket Nos. 294627 and 294628) (*Krebs I*), p 3. Whether GLEI first breached the employment agreement has been explicitly decided in a previous opinion and I will not revisit it.

Finally, Dr. Krebs argues that the trial court had discretion to determine the amount of reasonable attorney fees, but that it did not have the discretion to reduce that award to $0 when he was contractually entitled to a recovery. I conclude that the trial court's decision to adjust the attorney-fee award to $0 fell within the range of reasonable and principled outcomes on the basis that Dr. Krebs was the prevailing party only because of the false premise that his employment agreement had not been assigned from GLE to GLEI. As already discussed, after determining a baseline figure for reasonable attorney fees, a trial court may then adjust that figure up or down by considering eight specific factors and any additional relevant factors. *Pirgu*, 499 Mich at 281. If the trial court considers additional factors, it should "justify the relevance and use of any additional factors." *Id*. at 282. Typically, the purpose of fee-shifting provisions is to deter protracted litigation. See *Smith v Khouri*, 481 Mich 519, 528; 751 NW2d 472 (2008) (discussing the fee-shifting provisions for rejecting case evaluation). Regardless, the usual purpose of fee-shifting provisions is not to produce windfalls. *Id*. And courts generally disfavor granting undeserved windfalls. See e.g., *Wilmore-Moody v Zakir*, 511 Mich 76, 88; 999 NW2d 1 (2023) (concerning an automobile insurance contract).

-4-

At the time of the trial court's decision, the parties had engaged in more than 10 years of litigation regarding whether Dr. Krebs's employment agreement had been assigned to GLEI. Dr. Krebs based his defense on the technical lack of an assignment, arguing that this had relieved him of any obligations or liabilities under that contract, *Krebs II*, unpub op at 2, and summary disposition was granted in his favor on that basis, *id*. at 6. Although GLEI produced Assignment 3 well after the liability phase of the proceedings had been resolved, Dr. Krebs agreed that the signature on the document was his signature. Although Dr. Krebs presented evidence that he had not remembered the assignment, this Court generally defers to the trial court's superior ability to assess a witness's credibility. *Smith v Straughn*, 331 Mich App 209, 217; 952 NW2d 521 (2020). Indeed, "the law is clear that one who signs an agreement, in the absence of coercion, mistake, or fraud, is presumed to know the nature of the document and to understand its contents, even if he or she has not read the agreement." *Bakeman v Citizens Ins Co of the Midwest*, 344 Mich App 66, 76; 998 NW2d 743 (2022) (quotation marks and citation omitted).

The trial court's consideration of an additional relevant factor was clearly stated and justified. The trial court did not hold that Dr. Krebs was not entitled to contractual attorney fees; it held that he was entitled to fees, but that the reasonable amount of fees was $0. Although adjusting an attorney-fee award from a baseline figure of $227,273.48 to $0 is extreme, under the specific facts of this case, this was not an unreasonable result in order to avoid an unjust windfall to Dr. Krebs.[2]

/s/ Anica Letica

---

[2] In light of my conclusion, it is unnecessary to determine whether Dr. Krebs's bankruptcy fees should have been included in his award. Regardless, I agree with the majority that the trial court properly denied Krebs's request for attorney fees arising from the bankruptcy proceedings.