*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

MICHAEL NEMETH and RONALD RISTAU,

        Plaintiffs-Appellees,

v

ALICIA DIGIROLAMO and DANIEL MAILLET,

        Defendants-Appellants.

UNPUBLISHED
March 12, 2025
2:19 PM

No. 366595
Oakland Circuit Court
LC No. 2021-189827-CH

Before: MARIANI, P.J., and RIORDAN and FEENEY, JJ.

PER CURIAM.

Defendants appeal as of right the order awarding attorney fees to plaintiffs, and also challenge two prior orders granting plaintiffs' first motion for partial summary disposition pursuant to MCR 2.116(C)(10) (failure to create a genuine issue of material fact), and granting in part plaintiffs' second motion for partial summary disposition pursuant to MCR 2.116(C)(10). We affirm.

## I. FACTS

Defendants and plaintiffs each own lots in a five-lot neighborhood governed by a restrictive covenant known as the Ski Club Agreement ("agreement"). The five lots of land are situated around a manmade lake designed for water skiing. Plaintiffs own two of the lots and defendants own one. Each person who owns one of the five lots automatically is a member of the neighbor association governing the enforcement of the agreement and has one vote in neighbor-association matters. In an attempt to improve the quality of the soil on their property, defendants signed a pasture lease with Beth Wojciechowski. Pursuant to the lease, Wojciechowski brought four cows and a ram to defendants' property to graze thereon and distribute manure. Defendants constructed a fence and shelter for the animals. During summer 2021, Wojciechowski drove her vehicles daily onto defendants' pasture to provide food and water for the animals. Plaintiffs filed a complaint seeking injunctive relief from the trial court to prohibit defendants from boarding the animals, maintaining the shelter, and allowing Wojciechowski to regularly drive her vehicles off of defendants' cement driveway. Plaintiffs claimed that these activities violated various restrictions in the agreement. Defendants denied that any of these activities violated the agreement and argued

that the neighbor-association members waived their right to enforce the agreement because they permitted other violations thereof to go uncontested.

Plaintiffs moved for partial summary disposition on these issues and the trial court granted their motion, ruling that the agreement was enforceable and defendants violated it by having the animals on their land, constructing a shelter without preapproval from the neighbor association, and allowing Wojciechowski to regularly drive her vehicles off of defendants' cement driveway. Plaintiffs also amended their complaint to add the claim that defendants violated the agreement by constructing a large fence for the animals. Plaintiffs filed a second motion for partial summary disposition, which included the arguments from the first motion and the additional fence argument. The trial court ruled that the issues addressed in its order granting plaintiffs' first motion for partial summary disposition were moot but granted the part of plaintiffs' second motion for partial summary disposition concerning the fence.

The agreement dictated that attorney fees be awarded to the prevailing party in any dispute related to the enforcement of the agreement. Accordingly, the trial court ruled that, as the prevailing parties, plaintiffs were entitled to reasonable attorney fees. After the parties engaged in an evidentiary hearing to determine the amount of attorney fees, the trial court awarded plaintiffs $56,370. Importantly, the trial court declined to award attorney fees for most of the work plaintiffs' attorney performed with respect to the second summary-disposition motion because it was mostly redundant of the first summary-disposition motion. The trial court also declined to award attorney fees for most of the work plaintiffs' attorney performed with respect to plaintiffs' motion to amend the first amended complaint because plaintiffs did not file a second amended complaint, although the trial court granted plaintiffs' motion to do so. Finally, the trial court excluded all costs incurred as a result of the litigation in determining the award of attorney fees because the agreement only assigned attorney "fees" to the prevailing party.

This appeal followed.

## II. STANDARD OF REVIEW

"Appellate courts review de novo a trial court's decision on a summary-disposition motion." *Jewett v Mesick Consol Sch Dist*, 332 Mich App 462, 470; 957 NW2d 377 (2020). A party is entitled to summary disposition pursuant to MCR 2.116(C)(10) when the evidence does not establish a genuine issue of material fact. *Id*. "A genuine issue of material fact exists when the record, viewed in the light most favorable to the nonmoving party, leaves open an issue upon which reasonable minds might differ." *MacDonald v Ottawa Co*, 335 Mich App 618, 622; 967 NW2d 919 (2021) (quotation marks and citation omitted).

"Negative covenants are grounded in contract." *Thiel v Goyings*, 504 Mich 484, 495; 939 NW2d 152 (2019). "Therefore, the interpretation of restrictive covenants is a question of law that this Court reviews de novo." *Id*. "[W]e enforce unambiguous restrictions as written." *Id*.

"A trial court's award of attorney fees is reviewed for an abuse of discretion, which occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Lakeside Retreats LLC v Camp No Counselors LLC*, 340 Mich App 79, 88; 985 NW2d 225 (2022) (quotation marks and citation omitted). "Any underlying factual findings are reviewed for clear

error, which occurs if this Court is definitely and firmly convinced that the trial court made a mistake." *Id*. "The reasonableness of the fees awarded is also reviewed for an abuse of discretion, and any underlying questions of law are reviewed de novo." *Id*. at 89. "Questions involving the proper interpretation of a contract or the legal effect of a contractual clause are also reviewed de novo." *Id*. (cleaned up).

## III. DISCUSSION

### A. WAIVER

Preliminarily, defendants argue that the neighbor association members waived their right to enforce parts of the agreement by allowing various past violations thereof to go uncontested. However, Restriction 21 expressly states, "Any failure to enforce any covenant shall not be deemed a waiver as to that particular violation or as to any other violation of such Covenant."

Generally, anti-waiver clauses are enforceable. See *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 372; 666 NW2d 251 (2003). However, "contracts with written modification or anti-waiver clauses can be modified or waived notwithstanding their restrictive amendment clauses." *Id*. "[A] party alleging waiver or modification must establish a mutual intention of the parties to waive or modify the original contract." *Id*. "[I]n situations where a party relies on a course of conduct to establish modification, mutual assent is less clear and thus the rescission, or *waiver*, of the original contract's terms is not so evident. As a result, where course of conduct is the alleged basis for modification, a waiver analysis is necessary." *Id*. at 373-374 (footnote omitted). "[W]hen a course of conduct establishes by clear and convincing evidence that a contracting party, relying on the terms of the prior contract, knowingly waived enforcement of those terms, the requirement of mutual agreement has been satisfied." *Id*. at 374. "Further, whereas an original contract's written modification or anti-waiver clauses do not serve as barriers to subsequent modification by express mutual agreement, the significance of such clauses regarding the parties' intent to amend is heightened where a party relies on a course of conduct to establish modification." *Id*. "Accordingly, in assessing the intent of the parties where the intent to modify is not express, such restrictive amendment provisions are not necessarily dispositive, but are highly relevant in assessing a claim of amendment by course of conduct." *Id*.

With respect to waiver of restrictive covenants, "[t]here is no waiver where the character of the neighborhood intended and fixed by the restrictions remains unchanged." *Rofe v Robinson (On Second Remand)*, 126 Mich App 151, 155; 336 NW2d 778 (1983). In other words, "if a plaintiff has not challenged previous violations of a deed restriction, the restriction does not thereby become void and unenforceable when a violation of a more serious and damaging degree occurs." *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 219; 737 NW2d 670 (2007) (cleaned up).

> When determining whether prior acquiescence to a violation of a deed restriction prevents a plaintiff from contesting the current violation, we compare the character of the prior violation and the present violation. Only if the present violation constitutes a "more serious" violation of the deed restriction may a plaintiff contest the violation despite the plaintiff's acquiescence to prior violations of a less serious character. In general, a "more serious" violation occurs when a particular use of

-3-

property constitutes a more substantial departure from what is contemplated or allowable under a deed when compared to a previous violation. [*Id*.]

In this case, defendants argue that plaintiffs waived the ability to challenge an alleged violation of Restriction 2, which prohibits off-driveway use of vehicles on the lots, and Restriction 20, which prohibits temporary structures "except as may be necessary during the period of construction of permanent structures."[1] According to defendants, the ability to challenge Restriction 2 is waived because "all of the lot owners have boats, and to drop their boats into the lake all of the lot owners are required to have their boats towed by a truck driven off of their driveways and up to a boat launch." Moreover, according to defendants, the ability to challenge Restriction 20 is waived because two of the lot owners, who are not parties to this case, "have [a] temporary shed on their property near the lake which they use for storage."

With regard to Restriction 2, defendants averred in their affidavit that "Wojciechowski would typically visit the property daily during the evening hours in one of her trucks . . . ." There is nothing in the record to suggest, however, that the other lot owners tow their respective boats to the lake on a daily basis. But, common sense suggests otherwise, and furthermore, the agreement expressly contemplates that parcel owners will place boats into the lake. Thus, even if defendants are correct that violations of Restriction 2 have been waived to a limited extent by boat towing, that waiver does not allow the "more serious" violation of Restriction 2 that occurred in this case by the off-driveway use of trucks on a daily basis. See *id*.

With regard to Restriction 20, there is nothing in the record to suggest that the shed owned by the non-party property owners, which defendants assert is used for "storage," is akin to the shelter for animals at issue in this case. In other words, there is a difference in character between a storage shed for tools, recreational equipment, and so forth, and a shelter for live animals. The shelter for live animals likely presents other disturbances to the surrounding area that are not presented by the storage shed, such as animal smells and noises. Thus, even if defendants are correct that violations of Restriction 20 have been waived to a limited extent by the existence of a storage shed, that waiver does not allow the "more serious" violation of Restriction 20 that occurred in this case by the animal shelter. See *id*.[2]

## B. COWS

Turning to the specific violations at issue, defendants first argue that the trial court erred by determining that the agreement prevented them from having cows on their property. We

---

[1] Defendants do not argue waiver with respect to the other alleged violations of the agreement.

[2] Defendants also argue that plaintiff Nemeth previously constructed a fence and garage on his property without obtaining approval from the association, but do not expressly assert waiver on that basis. In any event, for the same fundamental reasons discussed above, we would conclude that, based on the record presented, defendants have not shown a genuine factual dispute that any nonenforcement of the agreement against Nemeth as to these matters would have resulted in waiver of the ability to enforce the agreement's requirements with respect to defendants' fencing and shelter for animals.

conclude that there was no genuine issue of material fact that defendants violated Restriction 7 by keeping cows on their property because cows are included in the agreement's prohibition of exotic animals on the lots.

Restriction 7 states, in relevant part:

**Pets:** No person shall have, keep or maintain on any parcel without approval of the Directors of the Association, any exotic animals except that a domestic cat, dog, bird or other domestic animal may be maintained or kept on any parcel at any time at the discretion of the owner. Parcels 4 and 5 may have horses for use by the lot owners, but boarding, kenneling, or like activities and [sic] prohibited, Lots 1, 2 and 3 shall not have horses.

Resolving this issue requires us to interpret the meaning of "domestic" and "exotic" as used in Restriction 7 of the agreement.

In reaching its conclusion, the trial court reasoned that the agreement categorizes horses and, by extension, other farm animals, as exotic animals because it specifically permits the owners of Lots 4 and 5 to have horses, which would have been unnecessary if they considered horses as domestic animals. We agree with the trial court. The agreement creates a general ban on all exotic animals. Then, the agreement provides an exception to the ban that permits the owners of Lots 4 and 5 to have horses. The need for the exception demonstrates that the agreement categorizes horses as exotic animals. Thus, given that the agreement categorizes horses, which commonly are considered farm animals, as exotic animals, it follows that the agreement also categorizes other farm animals as exotic, including cows. Consequently, Restriction 7 bans defendants from maintaining cows on their property.

This interpretation of the agreement conforms to the drafters' intent to preserve the five lots as a private, upscale neighborhood, given such neighborhoods would not typically include the presence of farm animals. See *Thiel*, 504 Mich at 496 (explaining that courts interpreting restrictive covenants must focus on the restrictor's intent). Moreover, Restriction 7 is titled, "Pets." Generally, a farm animal is not considered a pet. Rather, the term "pets" typically refers to animals like cats, dogs, and birds—the animals listed in Restriction 7 as examples of domestic animals. In the context of classifying animals as pets, cows are not akin to cats, dogs, and birds, further demonstrating that the drafters did not categorize farm animals as domestic animals. Thus, the trial court correctly concluded that there was no genuine issue of material fact that cows are included in the agreement's definition of exotic animals and defendants violated Restriction 7 by keeping cows on their property.

## C. FENCE

Defendants next argue that the trial court erred by concluding that they violated the agreement by constructing the fence. We conclude that there is no genuine issue of material fact that defendants violated the agreement by constructing the fence because defendants failed to provide the neighbor association with plans and specifications for the fence before constructing it.

Defendants assert that the trial court erred by concluding that their fence violated Restriction 8 for two reasons: (1) the fence was erected to contain animals that defendants were

permitted to have, and (2) a majority of the neighbor-association members acquiesced to the presence of the fence by failing to object thereto.

Restriction 8 states, in relevant part, "Fences shall be of uniform design; and the locations, materials, style, color, and design shall be first approved by the declarant or the Association." Restriction 8 also states that "[d]ecorative fence or fences erected to contain animals . . . are excepted from this prohibition, except that all such fences are subject to approval by the Association." The agreement additionally states the following in a separate section:

> No building, fence, wall or other structure shall be commenced, erected, or maintained upon the property nor shall any exterior addition to or change or alteration therein be made until the plans and specifications showing the nature, kind, shape, height, materials, and location of the same shall have been submitted to and approved in writing by the Association. The Association shall approve or disapprove the harmony of external design and location in relation to the surrounding structures and topography. In the event the Association fails to approve or disapprove such design and location within 30 days after said plans and specifications have been presented to it, approval will not be required, and this Article shall be deemed to have been fully satisfied.

First, regardless of whether defendants erected the fence to contain animals, they were still required to submit plans and specifications to the neighbor association and obtain approval before constructing the fence. There is no indication in the record that defendants did so. Indeed, Nemeth stated that defendants gave no notice before they built the fence. Because defendants failed to comply with the requirement to submit plans and specifications before constructing their fence, the construction thereof necessarily violated the agreement.

Second, defendants argue that they were permitted to have the fence because a majority of the neighbor-association members acquiesced to the presence of the fence and their acquiescence amounted to approval. However, that alleged acquiescence does not change the fact that defendants initially violated the agreement by building the fence without submitting plans and specifications to the neighbor association beforehand. The agreement mandates the submission of plans and specifications first and then mandates approval for the plan. Approval only becomes unnecessary when, after plans and specifications have been presented, the neighbor association fails to approve or disapprove the design and location within 30 days. Defendants never reached the approval stage because they never submitted a plan.

In conclusion, there is no genuine issue of material fact that defendants violated the agreement by building the fence without first submitting plans and specifications to the neighbor association. Thus, the trial court did not err by concluding that defendants violated the agreement by erecting the fence.

## D. OFF-DRIVEWAY VEHICLES

Next, defendants argue that the trial court erred by determining that they violated the agreement by allowing vehicles to be driven off of their cement driveway and onto their lot. We conclude that there is no genuine issue of material fact that defendants violated the agreement by

allowing Wojciechowski to drive her vehicles on nonconcreted parts of their property as Restriction 2 unambiguously prohibits off-driveway use of vehicles on the lots.

Defendants assert that the trial court erred by concluding that they violated the agreement by allowing Wojciechowski to drive her vehicles off of their concrete driveway to deliver food and water for the animals because (1) Restriction 2 only prohibits lot owners from storing vehicles that are not in regular use, and (2) even if the agreement did prohibit the subject activity, the neighbor association waived the right to enforce that part of the agreement by failing to enforce it against the other members who violated it. Regarding the latter argument, as discussed earlier, Restriction 21 clearly states that the failure to enforce the agreement against a past violation does not waive a member's right to enforce the agreement against any other violation, and that anti-waiver provision was not itself waived under the circumstances of this case.

Regarding the former argument, Restriction 2 does prohibit off-driveway use of vehicles on the lots. Restriction 2 states, in relevant part:

> **Vehicle Parking:** No vehicles . . . shall be permitted upon, used, parked, or kept at any time on the properties herein described, except in the attached garages or, for vehicles in regular use, on the concrete driveways.

While the title of Restriction 2 admittedly is "Vehicle Parking," the restriction expressly and unambiguously prohibits the "use" of vehicles outside of garages or off the concrete driveways. "[U]nambiguous contracts are not open to judicial construction and must be enforced as written, unless a contractual provision would violate law or public policy." *Bloomfield Estates*, 479 Mich at 212 (cleaned up). It is undisputed that Wojciechowski drove vehicles on defendants' grass every day during summer 2021. This violated the prohibition against using vehicles off of the concrete driveway. Therefore, the trial court did not err when it concluded that there was no genuine issue of material fact that defendants violated Restriction 2.

## E. SHELTER

There is no genuine issue of material fact that defendants violated the agreement by constructing the shelter because they failed to provide the neighbor association with plans and specifications for the shelter before constructing it.

Defendants contend that they were permitted to have the shelter because it was an outbuilding and all property owners were entitled to have two outbuildings under Restriction 13.[3] Additionally, defendants argue that, even if the shelter constituted a temporary structure that was prohibited by the agreement,[4] the neighbor association waived any objection thereto because it allowed other property owners to build and maintain a temporary structure on their property.

---

[3] Restriction 13 provides that "[o]ther than the attached garage, each parcel shall be limited to two outbuildings, with the size and location to be approved by the Association."

[4] Restriction 20 provides that "[t]emporary structures are not permitted except as may be necessary during the period of construction of permanent structures, and then only as approved by the Association."

However, as discussed earlier, that waiver argument is meritless under the circumstances of this case.

Further, it is inconsequential whether the shelter was a temporary structure or an outbuilding because defendants failed to submit plans and specifications for the shelter and obtain approval from the neighbor association before they constructed it. As noted, Restrictions 13 and 20 both specifically require approval of the association, and the agreement also generally states the following: "No building, fence, wall or other structure shall be commenced, erected, or maintained . . . until the plans and specifications showing the nature, kind, shape, height, materials, and location of the same shall have been submitted to and approved in writing by the association." Approval only becomes unnecessary when, after plans and specifications have been presented, the neighbor association fails to approve or disapprove the design and location within 30 days. However, this exception hinges on the premise that plans and specifications were provided to the neighbor association. Nothing in the record indicates that defendants ever made such a presentation. Therefore, the trial court did not err by concluding that there was no genuine issue of material fact that defendants violated the agreement by constructing the shelter.

## F. ATTORNEY FEES

Finally, defendants argue that the trial court erred by awarding plaintiffs' attorney fees because plaintiffs should not have been the prevailing parties and, additionally, the fees were excessive. We disagree and conclude that defendants failed to demonstrate that the trial court abused its discretion by awarding plaintiffs $56,370 in attorney fees.

As discussed earlier, the trial court did not err with respect to the disputed substantive rulings. Therefore, plaintiffs were the prevailing party and were entitled to reasonable attorney fees under the agreement.[5] While defendants broadly claim that plaintiffs' attorney spent many hours working on tasks that resulted in excessive, redundant, and unnecessary fees, they specifically challenge only seven of the tasks plaintiffs' attorney provided. The trial court ruled that plaintiffs could not recover attorney fees for five of the seven entries defendants challenge on appeal. Therefore, only two of the challenged entries are relevant to this appeal.

The trial court permitted plaintiffs to recover fees for the following two entries:

07/28/2022[:] Telephone conference with R. Ristau regarding issues related to Second Motion for Summary Judgment and additional claim for violation of deed restrictions related to installation of boat ramp without Association approval; follow up conversation regarding same; contact court regarding scheduling conflict

---

[5] The agreement provides that "[t]he court may award actual, reasonable attorney fees to the prevailing party." While the word "may" is discretionary, see *Old Kent Bank v Kal Kustom, Inc*, 255 Mich App 524, 532; 660 NW2d 384 (2003), defendants do not specifically argue that the trial court should have declined to award attorney fees in this case beyond the contention that plaintiffs' claims were meritless.

of SD hearing and trial; review deed restrictions regarding applicability of boat ramp as structure.

* * *

08/08/2022[:] Review deed restrictions and zoning ordinance regarding boat ramp structures; review standards regarding motion to amend complaint; outline brief regarding same; correspondence to judge Rowe regarding copy of Reply.

Plaintiffs' attorney claimed one hour for the first entry and 1.6 hours for the second entry. Defendants argue that plaintiffs should not have been awarded attorney fees for these invoices because they were related to the second amended complaint. However, the trial court declined to award fees for most of the work performed on the second amended complaint because it never was filed. The trial court also declined to award attorney fees for most of the work performed on the second motion for partial summary disposition because it was largely redundant of the first motion.

For each of these, the trial court did not abuse its discretion by awarding plaintiffs' attorney fees. First, plaintiffs' attorney necessarily had to spend time consulting his clients regarding the boat ramp and performing preliminary research to determine whether filing a second amended complaint was necessary. While plaintiffs ultimately decided not to file the motion, it was reasonable for the trial court to award attorney fees for the preliminary work thereon. Second, it was reasonable for the trial court to award some attorney fees concerning the second motion for partial summary disposition because, while the second motion mostly was redundant of the first, it was not identical and raised a new issue on which plaintiffs prevailed. Third, these entries also included time spent on reasonable communication with the trial court. Thus, we conclude that the trial court did not abuse its discretion by awarding $780[6] for the entirety of the foregoing activities, especially where, as here, plaintiffs did not receive attorney fees for most of the time spent on the second amended complaint and second motion for partial summary disposition. Moreover, even if the trial court erred by awarding fees for these two entries, that would be insufficient to conclude that its award of $56,370 in attorney fees fell outside the range of reasonable and principled outcomes, given that the disputed charges only amounted to 1.4% of the final award.[7]

The trial court provided a six-page opinion and order in which it carefully applied the test outlined in *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008), and the test outlined in *Wood v*

---

[6] This number reflects the sum hours for these two entries multiplied by the rate plaintiffs' attorney charged: 2.6 x $300.

[7] Defendants also challenge the reasonableness of the costs plaintiffs sought. However, the trial court did not award costs to plaintiffs. Therefore, this argument is meritless. Finally, defendants argue that ministerial work is not reimbursable, but provide no authority in support of their argument or specific examples of time entries for which the trial court awarded fees that contained ministerial tasks. Accordingly, defendants abandoned this part of the argument. See *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015) ("[When] a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned.") (quotation marks and citation omitted).

*Detroit Auto Inter-Ins Exchange*, 413 Mich 573; 321 NW2d 653 (1982), to determine the reasonability of plaintiffs' requested fees. Apart from the two entries discussed above, defendants do not challenge any aspect of the trial court's fee analysis, including its determination that $300 was an appropriate hourly rate for plaintiffs' attorney. The trial court's analysis is clear, sound, and predominantly uncontested. Therefore, we conclude that defendants failed to demonstrate the trial court abused its discretion by awarding plaintiffs $56,370 in attorney fees.

## IV. CONCLUSION

The trial court did not err by granting summary disposition in favor of plaintiffs on the challenged issues, nor did the trial court abuse its discretion by awarding plaintiffs $56,370 in attorney fees. We affirm.

/s/ Philip P. Mariani
/s/ Michael J. Riordan
/s/ Kathleen A. Feeney